**Ronald J. LaVIGNE, Petitioner,**

v.

**STATE of Alaska, Respondent.**

**No. S-3873.**

Supreme Court of Alaska.

May 31, 1991.

Susan Orlansky, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for petitioner.

Cynthia M. Hora, Asst. Atty. Gen., Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for respondent.

OPINION

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

MOORE, Justice.

Petitioner Ronald J. LaVigne's lawyer denied him the opportunity to testify in his own behalf at his criminal trial. After being convicted by a jury, LaVigne moved for a new trial on the grounds that his rights under the United States and Alaska Constitutions were violated. The superior court denied LaVigne's motion after La-Vigne refused to offer proof of what his testimony would have been, thus establishing that he was prejudiced by the violation of his rights. The court of appeals upheld the decision. *LaVigne v. State,* 788 P.2d 52 (Alaska App.1990). It agreed that any error was harmless since LaVigne had not shown that it prejudicially affected the outcome of his trial. *Id.* LaVigne then petitioned this court, claiming that the outcome-affecting harmless error test should not apply where a criminal defendant has been denied the fundamental constitutional right to testify.

We find that the lower courts applied an improper standard of review to the denial of LaVigne's constitutional right, and we therefore reverse and remand to the superior court for further proceedings.

I.

Ronald LaVigne was charged with the theft and unlawful possession of a backhoe loader on June 20, 1986. At his jury trial for the theft, LaVigne expressed his desire to testify in his own behalf to his lawyer. However, because counsel was aware that a prior conviction for felony theft could be used to impeach LaVigne, he advised against LaVigne's taking the stand. Ultimately, LaVigne's lawyer unilaterally decided that LaVigne would not testify. He never informed LaVigne of his right to insist on testifying in spite of counsel's advice. LaVigne was not aware that he had the power to override his attorney's advice.

Following his conviction, LaVigne retained new counsel and moved for a new trial, claiming that he received ineffective assistance of counsel because his lawyer usurped his decision whether to take the stand. The superior court relied on *Barry v. State*, 675 P.2d 1292 (Alaska App.1984), and *United States v. DeRobertis*, 811 F.2d 1008 (7th Cir.1987), to shift to LaVigne the burden of establishing a reasonable probability that the denial of his right to testify at trial affected the outcome of the proceedings.

The court then held an evidentiary hearing in which LaVigne could provide evidence of what his testimony at trial would have been so that he could establish prejudice due to the violation of his rights. Following the advice of new counsel, however, LaVigne apparently declined to testify further. The superior court denied LaVigne's motion for a new trial because he failed to show any prejudice.

The court of appeals affirmed the decision. *LaVigne v. State*, 788 P.2d 52 (Alaska App.1990). It agreed that a criminal defendant whose right to testify has been violated must make some minimal showing as to the nature of his testimony so that the trial court can assess whether the testimony would have affected the outcome of the trial. *Id.* at 55.

LaVigne petitioned this court, claiming that the violation of his constitutional right to testify in his own behalf mandates the *per se* reversal of his ensuing conviction.

## II.

The issue presented in this appeal poses a question of law subject to *de novo* review. The duty of this court is to adopt the rule of law which is most persuasive in light of precedent, reason and policy. *Guin v. Ha*, 591 P.2d 1281 (Alaska 1979).

## III.

In *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987), the United States Supreme Court recognized that a criminal defendant has a constitutional right to testify in his or her own behalf. It found that this right is grounded in the Fifth, Sixth and Fourteenth Amendments. It is "essential to due process of law in a fair adversary process" and, therefore, guaranteed by the Fourteenth Amendment. *Id.* at 51, 107 S.Ct. at 2709 (citing *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975)). The right is "also found in the Compulsory Process Clause of the Sixth Amendment, which grants a defendant the right to call 'witnesses in his favor.'" *Id.* 483 U.S. at 52, 107 S.Ct. at 2709. Moreover, the opportunity to testify is a "necessary corollary to the Fifth Amendment's guarantee against compelled testimony." *Id.*

In Alaska, the state constitution similarly accords criminal defendants a constitutional right to testify in their own behalf. *Hughes v. State*, 513 P.2d 1115 (Alaska 1973). In *Hughes*, we determined that a defendant's right to testify in his own defense is of such fundamental importance that "[n]o defendant requesting to testify should be deprived of exercising that right and conveying his version of the facts to the court or jury, regardless of competent counsel's advice to the contrary." *Id.* at 1119.

 The constitutional right to testify is both personal to the criminal defendant and fundamental to the dignity and fairness of the judicial process. *See United States v. Martinez*, 883 F.2d 750, 756 (9th Cir.1989), *petition for cert. filed*, 58 U.S.L.W. 2210 (U.S. May 17, 1990) (No. 89-7539); *United States v. Teague*, 908 F.2d 752, 757 (11th Cir.1990); *Rogers–Bey v. Lane*, 896 F.2d 279, 283 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 93, 112 L.Ed.2d 65 (1990); *United States v. Bernloehr*, 833 F.2d 749, 751 (8th Cir.1987); *United States ex rel. Wilcox v. Johnson*, 555 F.2d 115, 118–19 (3rd Cir.1977). The ultimate decision whether to exercise the right therefore rests with the defendant, not with defendant's counsel. For this reason, counsel may not effectively waive a defendant's right to testify against the defendant's will. *Hughes v. State*, 513 P.2d 1115, 1119 (Alaska 1973) ("The ultimate

decision should be that of the defendant, made with advice of counsel.") There is no dispute on these facts that LaVigne's attorney unlawfully usurped LaVigne's decision whether to testify, and LaVigne will not be bound by his counsel's conduct.

■ The parties initially characterized the issue in this case as one of deprivation of the right to effective assistance of counsel; the state continues to argue the case under this theory. However, we wish to be clear that an ineffective assistance of counsel analysis does not provide the proper framework for reviewing the constitutional violation at issue. Although it is clear that counsel's conduct in unlawfully usurping LaVigne's decision whether to testify fell below the standard of competence required of criminal defense attorneys, this fact alone does not compel application of the test for ineffective assistance of counsel.

*Rock v. Arkansas* informs us that La-Vigne's claim implicates his Fifth, Sixth and Fourteenth Amendment rights, not merely his Sixth Amendment right to the effective assistance of counsel. 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The conduct of LaVigne's lawyer at trial is therefore troublesome "not just for its possible impact on the reliability of the verdict, i.e., for its Sixth Amendment implications.... [C]ounsel's actions in not permitting [d]efendant the opportunity to testify affected the very fairness of the trial process itself." *United States v. Butts,* 630 F.Supp. 1145, 1148 (D.Me.1986). We therefore reject the state's argument in favor of limiting the scope of LaVigne's claim to ineffective assistance of counsel.

## IV.

We turn next to the standard of review which applies to violations of this personal and fundamental constitutional right. La-Vigne argues that the violation of his right to participate at trial compels the *per se* reversal of his conviction. The state contends that, because LaVigne was not prejudiced by the violation of his right, a harm-less error standard should apply, and La-Vigne's conviction should be affirmed.

In *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court discussed the standard of review for constitutional errors. The Court recognized that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." [1] *Id.* at 23, 87 S.Ct. at 827. In such cases, a rule of *per se* reversal must apply. However, the Court also acknowledged that some constitutional errors may be so insignificant in the setting of a particular case that "they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of [a] conviction." *Id.* at 22, 87 S.Ct. at 827. In such situations, the Court determined that constitutional error is harmless if a reviewing court finds the error "harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828.

■ This court restated the *Chapman* standard for certain federal constitutional errors in *Love v. State,* 457 P.2d 622 (Alaska 1969). We hold today that this standard of "harmless error beyond a reasonable doubt" applies to LaVigne's claim of constitutional error.

The "harmless error beyond a reasonable doubt" standard has been applied to other cases involving violations of the right to testify. *See Wright v. Estelle,* 549 F.2d 971 (5th Cir.1977), *aff'd,* 572 F.2d 1071 (5th Cir.1978) (en banc), *cert. denied,* 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978); *United States v. Teague,* 908 F.2d 752 (11th Cir.1990). In *Teague,* the Eleventh Circuit Court of Appeals explained that the burden of proving that the error was harmless beyond a reasonable doubt rests with the prosecution. *Id.* at 760. Because of the particular facts of LaVigne's case, we must set forth a more detailed explanation of the burden shifting process.

■ Application of this standard in the present case involves a two-step process. First, after showing that his constitutional

---

1. *See, e.g., Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to

counsel); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (impartial judge).

right to testify has been denied, LaVigne bears an initial burden to show he would have offered relevant testimony had he been allowed to testify at his trial. Because LaVigne's right to testify is a fundamental right to participate in the judicial process, this preliminary burden is a minimal one. We acknowledge that there are myriad reasons why an accused may wish to testify in his own behalf. For example:

In the narrow world of the courtroom the defendant may have faith, even if mistaken, in his own ability to persuasively tell his story to the jury. He may desire to face his accusers and the jury, state his position, and submit to examination. His interest may extend beyond content to the hope that he will have a personalized impact upon the jury or gain advantage from having taken the stand rather than to seek the shelter of the Fifth Amendment. Or, without regard to impact upon the jury, his desire to tell 'his side' in a public forum may be of overriding importance to him. Indeed, in some circumstances the defendant, without regard to the risks, may wish to speak from the stand, over the head of judge and jury, to a larger audience. It is not for his attorney to muzzle him.

*Wright v. Estelle*, 572 F.2d at 1078 (Godbold, J., dissenting). In order to respect these considerations, we emphasize that the defendant's initial burden of showing he had relevant testimony to offer at his trial is a light one.

In this case, the record reveals that La-Vigne reacted to the testimony of several of the state's witnesses and clearly indicated a desire to take the stand to respond to their testimony. LaVigne's attorney testified: "[S]everal times, you know, when some of the witnesses were testifying, you know, [LaVigne] says, you know, they're really cutting me up. And he says, I've got to testify. And I said, no." Although LaVigne's reaction is not sufficient to meet his burden, his behavior does indicate that he clearly wished to testify in response to the prosecution's case. Due to the importance of the constitutional rights involved and the uncertainty of the applicable law, it is our view that this case should be re-

manded to the superior court so that, in light of the analysis we have set forth herein, the defendant may be given an opportunity to show that he would have offered relevant testimony had he been allowed to testify.

If the defendant's initial burden is met, the burden will then shift to the state to show that denial of his constitutional right was harmless error beyond a reasonable doubt. *See United States v. Teague*, 908 F.2d 752 (11th Cir.1990). Unlike the minimal initial burden borne by the defendant, however, the state's burden is a heavy one. This is largely due to the limited ability of appellate courts to judge accurately the possible effect on the jury of a defendant's appearance on the stand. Although we agree that an appellate court can competently weigh the content of the defendant's testimony, a reviewing court is unable to measure the potential impact of many other factors on the jury. It has been said that an appellate court

cannot weigh the possible impact upon the jury of factors such as the defendant's willingness to mount the stand rather than avail himself of the shelter of the Fifth Amendment, his candor and courtesy (or lack of them), his persuasiveness, his respect for court processes. These are elusive and subjective factors, even among persons who might perceive and hear the defendant, but more significantly, they are matters neither communicated to an appellate judge nor susceptible of communication to him. Appellate attempts to appraise impact upon the jury of such unknown and unknowable matters is purely speculative.

*Wright v. Estelle*, 572 F.2d at 1082 (Godbold, J., dissenting); *see also McKaskle v. Wiggins*, 465 U.S. 168, 179, 104 S.Ct. 944, 951, 79 L.Ed.2d 122 (1984) ("From the jury's perspective, the message conveyed by the defense may depend as much on the messenger as on the message itself.")

Due to the inherently speculative nature of an appellate court's task in cases like LaVigne's, we expect there will be relatively few cases in which the reviewing court can confidently assert that the denial of the

right to testify was so insignificant as to constitute harmless error beyond a reasonable doubt. *See State v. Wickham*, 796 P.2d 1354, 1358 (Alaska 1990) (The factual vacuum created by the absence of the defendant's testimony and the state's cross-examination and rebuttal generates a significant risk that appellate review based on harmless error will be wholly speculative.) However, we find that application of the *Chapman* rule will promote judicial economy without sacrificing fairness in those cases where the state can prove beyond a reasonable doubt that the error was harmless.

To avoid future cases such as LaVigne's, we believe that trial judges should take steps to insure that a criminal defendant's failure to take the stand in his or her own defense was the result of a knowing and voluntary decision made by the defendant. To accomplish this, we believe judges should make an on-the-record inquiry after the close of the defendant's case, although out of the jury's hearing, into whether a nontestifying defendant understands and voluntarily waives his right. Such action insures a valid waiver of the defendant's right. It will also assist in any subsequent appellate review of a defendant's claim to the contrary.

Because the lower courts did not apply the analysis we have set forth today, we REVERSE the decision of the court of appeals and REMAND to the trial court for application of the standard discussed above.