Harry NOAH, Appellant,

v.

STATE of Alaska, Appellee.

No. A–5102.

Court of Appeals of Alaska.

Jan. 6, 1995.

Elizabeth Brennan, Asst. Public Defender, Bethel, and John B. Salemi, Public Defender, Anchorage, for appellant.

Kenneth M. Rosenstein, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

COATS, Judge.

Harry Noah was convicted, following a jury trial, for selling an alcoholic beverage without a license in an area where the issuance of a license is prohibited. AS 04.11.010(a); AS 04.16.200(b). Noah appeals, arguing that District Court Judge Mark I. Wood erred in failing to grant Noah's mistrial motion. We reverse.

On the evening of July 2, 1992, two off-duty Bethel police officers were driving away from Alice's Restaurant in Bethel when they saw a group of six people who appeared to be intoxicated. The police saw one person, Robert David, hand what appeared to be currency to another person in the group, Harry Noah, the defendant. The police then saw Noah reach into his waistband, pull out a bottle which appeared to a liquor bottle, and hand it to David.

Noah is deaf and mute, and was not able to communicate with the police officers. The police officers placed him under arrest for sale of an alcoholic beverage without a license. In searching Noah they found $100 and a Gilbey's vodka bottle, which was about a quarter full. The police questioned Robert David immediately after the incident. At the time of the interview, David was intoxicated. David told the police that he did not know the person who sold him alcohol and that the seller spoke English and Yup'ik.

Noah's case went to trial on June 1, 1993. At trial, the state presented the testimony of Robert David and the two police officers. In court, David testified that he knew Noah and that Noah had sold him a bottle of liquor for $50. The defense did not present any evidence, resting its case after the state rested its case.

In her closing argument, counsel for the defense first argued that a sale of alcohol had not occurred and that the men with Noah had simply been passing a bottle around when they were observed by the police. Second, counsel argued that even if an illegal sale had occurred, another of the men present was responsible and that the case was one of mistaken identity. She further argued that the police had not been in a position to accurately see what was happening, and that Robert David was an incredible witness who was drunk at the time of the alleged sale and who had a demonstrably bad memory. Counsel also argued that because of Noah's disability, he did not have the skills to be involved in the alleged sale.

After closing arguments, Judge Wood instructed the jury and sent it to deliberate. After the jury had begun its deliberations, the prosecutor reminded the court that the court needed to address Noah personally about his desire to testify. See LaVigne v. State, 812 P.2d 217 (Alaska 1991). When asked if he wanted to testify, Noah indicated that he did. At that point, the court interrupted the deliberations of the jury. After a short recess during which he discussed the matter with his attorney, Noah communicated that he was confused and did not know what type of questions would come in cross-examination. He said that although his attorney had advised him not to testify, he wanted to tell his side of the story. Judge Wood found that Noah wanted to testify and called the jury back to the courtroom, informing them that the trial would continue the next morning and that Noah would testify.

The next day, before he testified, Noah moved for a mistrial. Noah's attorney argued that because of her previous discussions with Noah she had not expected him to testify and as a result, she had made arguments that would be inconsistent with Noah's testimony. As an offer of proof, counsel outlined Noah's expected testimony:

> [Noah] was in Bethel and was approached by some people in a white car to get into the car with them. He rode around with them and they gave him a bottle of alcohol and pointed to a group of people [indicating] that he [should] walk towards that group of people, and they handed him some money. He put it in his pocket because he didn't know what to do. He felt pressure by the group of people he gave the bottle of alcohol. He was very confused and didn't know what was going on. Then the police came. The people in the car drove away and the police threw him on the ground and arrested him.

Counsel argued that this new testimony, and the accompanying theory that Noah did not knowingly or intentionally sell the alcohol, were inconsistent with her earlier closing argument. She argued that even if the court gave a curative instruction, the jury would not forget the previous day's argument, and the jurors would view her argument as incredible in light of Noah's testimony. Judge Wood denied the motion.

Noah testified before the jury in a manner consistent with the earlier offer of proof. After Noah testified, Judge Wood instructed the jury that the previous closing arguments had been based on the evidence at that time and that those arguments should be disregarded to the extent that they were inconsistent with the additional closing arguments that the jury was about to hear.

The parties then argued the case for the second time. The prosecutor argued that Noah's testimony strengthened the state's earlier arguments and that although Noah may have been used as an intermediary in the sale, his disability did not prevent him from knowing and understanding what he was doing. Noah's attorney abandoned her earlier defense theory and argued that Noah was tricked into selling the bottle of alcohol and that he had been too confused at the time to have sold the bottle knowingly.

The jury was sent to deliberate a second time and returned with a verdict of guilty. Noah now contends that Judge Wood erred in denying his mistrial motion.

 Whether to grant a mistrial is within the sound discretion of the trial court, and the trial court's decision will not be reversed on appeal absent an abuse of its discretion. For the court to have abused its discretion, its decision must have been clearly unreasonable. *Roth v. State*, 626 P.2d 583, 585 (Alaska App.1981).

In *LaVigne*, 812 P.2d at 222, the Alaska Supreme Court stated:

> To avoid future cases such as LaVigne's, we believe that trial judges should take steps to insure that a criminal defendant's failure to take the stand in his or her own defense was the result of a knowing and voluntary decision made by the defendant. To accomplish this, we believe judges should make an on-the-record inquiry after the close of the defendant's case, although out of the jury's hearing, into whether a nontestifying defendant understands and voluntarily waives his right. Such action insures a valid waiver of the defendant's right. It will also assist in any subsequent appellate review of a defendant's claim to the contrary.

 Judge Wood erred by failing to make the on-the-record inquiry required by *LaVigne* before the case was submitted to the jury. Because of this omission, we are unable to determine what response Noah might have made had the inquiry been conducted at the proper time. However, when Judge Wood conducted the inquiry, Noah wanted to exercise his right to testify. His testimony was inconsistent with his counsel's previous summation, thus undermining the

credibility of both Noah's testimony and his attorney's closing argument. In addition, the state was in a position to point out the inconsistencies. Under the circumstances, we believe it clear that the trial court's submission of the case to the jury without first obtaining Noah's knowing and voluntary waiver of his right to testify prejudiced Noah's right to fundamental fairness at trial. We accordingly conclude that Noah's conviction must be reversed.

REVERSED.