PEOPLE v SOLOMON (AMENDED OPINION)

Docket No. 181158. Submitted September 3, 1996, at Grand Rapids. Decided December 20, 1996, at 9:10 A.M. Leave to appeal sought.

Deris D. Solomon was convicted by a jury in the Jackson Circuit Court, Chad C. Schmucker, J., of unarmed robbery. He then acknowledged that he was a fourth-offense habitual offender and was sentenced to twenty-five to forty years in prison. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not err in finding that the police had probable cause to arrest the defendant and to conduct a search of the defendant incident to the arrest.

2. The trial court's decision to allow the complainant's in-court identification of the defendant as the assailant did not deny the defendant a fair trial. If error occurred, it was harmless in light of the overwhelming evidence against the defendant, including the testimony of several other witnesses who positively identified the defendant as the assailant.

3. The trial court abused its discretion in denying the defendant's request to testify, which was made after the parties' presentation of the evidence and before closing arguments.

4. The denial of the right to testify is a "trial error" that is subject to harmless-error analysis. Here, the error was harmless in light of the overwhelming evidence against the defendant. The prosecution met its burden of showing that the error was harmless beyond a reasonable doubt.

Affirmed.

1. SEARCHES AND SEIZURES — SEARCHES INCIDENT TO ARREST — SEARCHES WITHOUT WARRANTS.

The exception to the warrant requirement regarding a search incident to a lawful arrest allows an arresting officer to search the person arrested and seize any evidence to prevent its concealment or destruction; the exception applies whenever there is probable cause to arrest, even if an arrest is not made at the time the search is actually conducted.

2. CRIMINAL LAW — TRIAL — REOPENING OF PROOFS.

The reopening of proofs for either the prosecution or the defense generally rests within the sound discretion of the trial court; relevant considerations are whether any undue advantage would be taken by the moving party and whether there is any showing of surprise or prejudice to the nonmoving party.

3. CONSTITUTIONAL LAW — CRIMINAL LAW — HARMLESS ERROR — DENIAL OF DEFENDANT'S RIGHT TO TESTIFY.

A constitutional error does not automatically require reversal of a defendant's conviction; the denial of a defendant's right to testify is an error to which harmless-error analysis may be applied; the prosecution bears the burden of showing that the error was harmless beyond a reasonable doubt.

4. CRIMINAL LAW — TRIAL — HARMLESS ERROR.

The harmless-error doctrine is essential to preserve the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.

5. CONSTITUTIONAL LAW — CRIMINAL LAW — TRIAL — HARMLESS ERROR — DENIAL OF DEFENDANT'S RIGHT TO TESTIFY.

Violations of the constitution that are subject to harmless-error analysis are errors that occur during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt; a conviction will be upheld even in the face of a violation of a defendant's constitutional rights if it can be shown beyond a reasonable doubt that a trial error as opposed to structural defects in the constitution of the trial mechanism did not contribute to the guilty verdict; the denial of the defendant's right to testify is a trial error that is subject to a harmless-error analysis.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Dennis Hurst*, Prosecuting Attorney, and *Roberta A. Balon*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *David A. Moran*), for the defendant on appeal.

AMENDED OPINION

Before: DOCTOROFF, C.J., and HOOD and BANDSTRA, JJ.

DOCTOROFF, C.J. The complainant in this case, William Madden, was attacked in his hotel room after answering a knock on the door. Following a struggle with his attacker, Madden was briefly rendered unconscious. When he awoke, he discovered that his wallet and keys were missing. Madden saw the assailant attempt to unlock Madden's car. Madden went to the parking lot and yelled at the assailant, who then attacked Madden again. This attack was witnessed by several people. As Madden fell down, the assailant fled across a parking lot and through a Sears store, outside of which defendant was apprehended and detained by Sears security personnel. Madden's wallet was found at the spot where defendant was hiding, and Madden's keys were in defendant's possession. Defendant was convicted of unarmed robbery, MCL 750.530; MSA 28.798. Following his conviction, defendant acknowledged his status as an habitual offender, fourth offense. He was sentenced to twenty-five to forty years' imprisonment. He now appeals as of right. We affirm.

I

Defendant first argues that the trial court erred in finding that the police had probable cause to arrest him and thereafter subject him to a full incidental search. We disagree.

This Court will not disturb a trial court's ruling at a suppression hearing unless that ruling is found to be clearly erroneous. *People v Bordeau*, 206 Mich App 89, 92; 520 NW2d 374 (1994). The exception to the

warrant requirement regarding a search incident to a lawful arrest allows an arresting officer to search the person arrested and seize any evidence to prevent its concealment or destruction. *People v Arterberry*, 431 Mich 381, 384; 429 NW2d 574 (1988). The exception applies whenever there is probable cause to arrest, even if an arrest is not made at the time the search is actually conducted. *Id.*

Here, before defendant was searched, both arresting officers had separately obtained a description of defendant, they were aware of the fact that they were pursuing a fleeing robbery suspect, both spoke to eyewitnesses upon their arrival at the scene, and both were briefed by Sears security personnel concerning the chase and apprehension of defendant. Upon seeing defendant in the Sears security room, the officers agreed that defendant matched the description given by those who witnessed the robbery. Considering the facts known by the officers before defendant was searched, we are not left with a definite and firm conviction that the trial court erred in finding that the officers had probable cause to arrest defendant and conduct a search incident to the arrest. *People v Chambers*, 195 Mich App 118, 121; 489 NW2d 168 (1992).

II

Defendant next argues that he was denied a fair trial because Madden was allowed to positively identify him in court. We disagree. Even if Madden's in-court identification of defendant was tainted and unreliable, the court's decision to allow the identification was harmless in light of the overwhelming evi-

dence against defendant, including his identification
by several other witnesses.

At a lineup that occurred at the time of the prelimi-
nary examination, Madden was unable to positively
identify defendant as his assailant, but was "leaning
towards" choosing defendant. Over defendant's
motion to suppress, Madden testified at the prelimi-
nary examination that he was now sure that defend-
ant was the assailant. Madden indicated that,
although he could identify his assailant strictly from
his memory of the attack, he also was able to posi-
tively identify defendant as the attacker after seeing
the suspect being escorted down the hallway outside
the courtroom. Again, over objection, defendant was
allowed to give an in-court identification of defendant
at trial.

Although Madden's identification raises reliability
concerns, any error would warrant reversal only if it
was not harmless beyond a reasonable doubt. *People
v Winans*, 187 Mich App 294, 299; 466 NW2d 731
(1991). Considering the overwhelming evidence of
guilt, including the testimony of several other wit-
nesses who positively identified defendant as the
assailant, Madden's identification was merely cumula-
tive in nature and therefore harmless. Accordingly,
the admission of Madden's identification of defendant
did not deny the defendant a fair trial.

III

Next, defendant argues that the trial court denied
him his right to a fair trial by keeping him in shackles
throughout the trial without a finding that he was dis-
ruptive or dangerous. However, the record lacks any
discussion concerning the basis for defendant's being

shackled, there is no indication that the defense objected to the shackling or called upon the trial court to unshackle defendant, and there was no showing of actual prejudice. Thus, we find that the present issue was not properly preserved for our review. See *People v Stanaway*, 446 Mich 643, 694; 521 NW2d 557 (1994), cert den sub nom *Michigan v Caruso*, 513 US __; 115 S Ct 923; 130 L Ed 2d 802 (1995). We therefore decline to assess whether the court abused its discretion in allowing the jury to see defendant in shackles.

IV

Defendant next argues that the trial court abused its discretion and denied him a fundamental right in denying him the opportunity to testify in his own behalf. We agree that the trial court committed error, but find the error harmless beyond a reasonable doubt.

> "Generally, the reopening of proofs for either the prosecution or defense rests within the sound discretion of the trial judge. Relevant in ruling on a motion to reopen proofs is whether any undue advantage would be taken by the moving party and whether there is any showing of surprise or prejudice to the nonmoving party." [*People v Collier*, 168 Mich App 687, 694-695; 425 NW2d 118 (1988) (citations omitted).]

At the trial of this case, after the prosecution rested, the defense called two witnesses and then it, too, rested. The jury was then dismissed, and jury instructions were reviewed by the court and the attorneys. During this discussion, defendant's attorney argued that an instruction regarding intent should be given to the jury. Defense counsel indicated that

defendant lacked intent because "the keys just happened to stay with [defendant] because this individual came at him with the keys." The trial court denied the request for an instruction regarding intent, stating, "I really don't know that you presented any evidence of that or really even argued that."

The court reconvened approximately twenty-nine minutes later, and the trial court then inquired whether the parties were ready for closing arguments before the jury. It was at that time that defense counsel informed the court that defendant had advised him that he had planned to take the stand to testify. After discussing the issue with defendant and counsel, the court concluded that defendant was merely "playing games" in a tardy attempt to change his trial strategy. Accordingly, the court denied defendant's request to reopen the proofs. We find that the trial court erred in denying defendant's request to testify.

When speaking of the importance of a defendant's constitutional right to testify, the United States Supreme Court stated the following in *Rock v Arkansas*, 483 US 44, 51-52; 107 S Ct 2704; 97 L Ed 2d 37 (1987):

> The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution. It is one of the rights that "are essential to due process of law in a fair adversary process." The necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without due process of law include a right to be heard and to offer testimony. [Citation omitted.]

> *     *     *

> . . . In fact, the most important witness for the defense in many criminal cases is the defendant himself. There is no

justification today for a rule that denies an accused the opportunity to offer his own testimony.

\*        \*        \*

. . . Even more fundamental to a personal defense than the right of self-representation . . . is an accused's right to present his own version of events in his own words. A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness.

After reviewing the importance of a defendant's right to testify, the Court also noted that the right was not without limitation, stating that the right may " 'bow to accommodate other legitimate interests in the criminal trial process.' " *Id.* at 55, quoting *Chambers v Mississippi*, 410 US 284, 295; 93 S Ct 1038; 35 L Ed 2d 297 (1973).

In *Collier, supra,* the trial court had denied the defendant's motion to reopen the proofs to present a late-arriving defense witness. The request to reopen was made after both the prosecution and the defense had rested, but before closing arguments. This Court found that the trial court abused its discretion in arbitrarily deciding to not allow the testimony. 168 Mich App 694-697. However, in *People v Moore*, 164 Mich App 378, 383-384; 417 NW2d 508 (1987), modified 433 Mich 851; 509 NW2d 155 (1989), the defendant requested that the proofs be reopened for his testimony after closing arguments and after the defendant had already waived his right to testify. This Court found that the request to reopen the proofs was "very tardy" and that the trial court did not abuse its discretion in denying defendant's request to testify "at that stage of the trial."

In this case, there was no indication that defendant waived his right to testify, nor was there any indication that defendant would have gained any undue advantage or that the prosecution would have suffered any surprise or prejudice if defendant had testified. Furthermore, only twenty to thirty minutes passed between the time the defense rested and the time defendant indicated that he wished to take the stand, and neither party had yet delivered its closing arguments to the jury. Accordingly, we find that allowing defendant to exercise his constitutional right to testify would not have disrupted the flow of the trial in any significant way. Therefore, we conclude that the trial court abused its discretion in denying defendant's motion to reopen the proofs.

Although we find that the trial court erred in refusing to reopen the proofs to allow defendant's testimony, we further find that such error was harmless beyond a reasonable doubt, in light of the overwhelming evidence against defendant. The question whether a harmless-error analysis can be applied to a denial of a defendant's right to testify is an issue of first impression in Michigan. Thus, we look to the decisions of other jurisdictions for guidance. We agree with the majority of jurisdictions that have decided this issue and we hold that a harmless-error analysis is proper in this situation.

A constitutional error does not automatically require reversal. The United States Supreme Court has held that most constitutional errors can be harmless. *Arizona v Fulminante*, 499 US 279, 306; 111 S Ct 1246; 113 L Ed 2d 302 (1991). However, there are certain constitutional errors entailing a " 'structural defect[] in the constitution of the trial mechanism,

which def[ies] analysis by "harmless-error" standards.'" *People v Anderson (After Remand)*, 446 Mich 392, 405; 521 NW2d 538 (1994), quoting *Fulminante, supra* at 309. These errors can never be said to be harmless, and, upon finding any of these errors, a court must automatically reverse. *Anderson, supra.* Defendant contends that the denial of his right to testify is an error to which harmless-error analysis cannot be applied. We disagree.

"[T]he harmless error doctrine is essential to preserve the 'principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.'" *Fulminante, supra* at 308, quoting *Delaware v Van Arsdall*, 475 US 673, 681; 106 S Ct 1431; 89 L Ed 2d 674 (1986). Violations of the constitution that are subject to a harmless-error analysis are errors that "occurred during the presentation of the case to the jury, and that may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante, supra* at 307-308. A conviction will be upheld even in the face of a violation of a defendant's constitutional rights if, under the circumstances of the case, it can be shown beyond a reasonable doubt that a "trial error" as opposed to "structural defects in the constitution of the trial mechanism" did not contribute to the guilty verdict. *Fulminante, supra* at 309; *Chapman v California*, 386 US 18, 24; 87 S Ct 824; 17 L Ed 2d 705 (1967). We agree with the great weight of

authority that has concluded that denial of the right to testify is a "trial error" and is thus subject to a harmless-error analysis.

In *Wright v Estelle*, 572 F2d 1071 (CA 5, 1978), cert den 439 US 1004 (1978), the United States Court of Appeals for the Fifth Circuit, upon rehearing and in a decision en banc, affirmed the panel opinion as it was published in 549 F2d 971 (CA 5, 1977). In that case, the court decided:

> Even if petitioner was deprived of [the constitutional right to testify in his own behalf] we are convinced, as the court below was, it was harmless error beyond a reasonable doubt. *Chapman v California*, 386 US 18, 24; 87 S Ct 824, 828, 17 L Ed 2d 705, 710 (1967). It was harmless error beyond a reasonable doubt because we have no doubt that petitioner's testimony would not have altered the verdict. The evidence connecting [the petitioner] to this crime was overwhelming. [549 F2d 974.]

Similarly, in *Ortega v O'Leary*, 843 F2d 258 (CA 2, 1988), cert den 488 US 841 (1988), the United States Court of Appeals for the Second Circuit found that the trial court abused its discretion in failing to allow the defendant to testify on his own behalf. However, the court found that a harmless-error analysis applied and that the error was harmless beyond a reasonable doubt. 843 F2d 262-263. A similar analysis was also applied in *Wisconsin v Flynn*, 190 Wis App 2d 31, 53-57; 527 NW2d 343 (1994), cert den ___ US ___; 115 S Ct 1389; 131 L Ed 2d 241 (1995), where the court found that the defendant "has had a fair trial, and there is no reasonable likelihood of a different outcome on a retrial should he testify." 190 Wis App 2d 52. Harmless-error analysis was also applied to a denial of the right to testify in *Martinez v Ylst*, 951

F2d 1153, 1157 (CA 9, 1991), and *LaVigne v Alaska*, 812 P2d 217, 220-222 (Alas, 1991). We could find only one court that determined that a defendant's right to testify is "so basic to a fair trial that its infraction can never be treated as harmless error." *United States v Butts*, 630 F Supp 1145, 1148 (D Me, 1986) (citing the dissent of Judge Godbold in *Wright v Estelle*, 572 F2d 1081-1082). We have found no court that followed the *Butts* conclusion that denial of the right to testify can never be considered harmless error.

In finding that denial of a defendant's right to testify is subject to a harmless-error analysis, we recognize that the prosecution bears a heavy burden to show that the error was harmless beyond a reasonable doubt in light of the uncertain effect of the defendant's testimony on the jury. *Ylst, supra* at 1157; *LaVigne, supra* at 221. However, application of the harmless-error rule will promote judicial economy without sacrificing fairness in those cases where the prosecution can prove beyond a reasonable doubt that the error was harmless. *Id.* at 222. In this case, the evidence against defendant was overwhelming, and the prosecution met its burden of showing that the error was harmless beyond a reasonable doubt.

The prosecution presented the following evidence against defendant. The complainant described his assailant as a black male wearing a dark blue and red warm-up suit and a dark baseball cap. At trial, the complainant identified defendant as the individual who attacked him and stole his wallet and keys. Several other witnesses identified defendant as the individual they saw assault the complainant in the hotel parking lot, and their descriptions of the assailant and his attire matched that given by the complainant. Fol-

lowing the attack, these same witnesses called the police and followed the assailant as he ran into a nearby Sears. Inside Sears, one of the witnesses notified Sears' security of the assailant's presence. Sears personnel then pursued the individual into a nearby wooded area, and soon thereafter emerged with defendant in handcuffs. The security personnel found the complainant's wallet at the base of the tree where defendant was hiding and found the complainant's car keys in defendant's pocket.

We find that the evidence presented by the prosecution constituted overwhelming evidence of defendant's guilt. Witnesses saw defendant assault the complainant, they saw him flee the scene, and, upon his apprehension, defendant was in possession of the items stolen from the complainant. Several witnesses positively identified defendant as the assailant. We can fathom no possible testimony by defendant, no matter how sincere or convincing, that could have affected the jury's determination of guilt in this case. The evidence that defendant committed a robbery against the complainant was overwhelming, and we have no doubt that defendant's testimony would not have altered the verdict. See *Wright*, 549 F2d 974. Thus, this is the relatively rare instance in which the reviewing court can confidently assert that the denial of the right to testify was so insignificant as to constitute harmless error beyond a reasonable doubt. See *LaVigne*, *supra* at 221-222.

Affirmed.