953 P.2d 97 (1997)
89 Wash.App. 530
STATE of Washington, Respondent,
v.
Elve ROBINSON, Jr., Appellant.
No. 38231-4-I.
Court of Appeals of Washington, Division 1.
December 8, 1997.
As Amended on Denial of Reconsideration March 9, 1998.
*98 Washington Appellate Project, Michael Lawrence Mittlestat, Appellate Project, Seattle, for Appellant.
Macduffie Setter, and Laura D. Hayes, Whatcom County Prosecutor's Office, Bellingham, for Respondent.
AGID, Judge.
Elve Robinson appeals his conviction for unlawful imprisonment and second degree rape, arguing that the trial court should have granted his motion for a new trial because his attorney improperly prevented him from exercising his right to testify at trial. While we agree that his attorney acted improperly,[1] we do not agree that his right to testify was violated under the particular circumstances of this case. We affirm, holding that where a defendant is articulate and assertive and aware of his right to testify, he waives that right by not asserting it before the jury's verdict. We also hold that, to prevail on a post-trial motion, he must present some evidence of what his testimony would be so the trial court can evaluate its potential impact on the outcome of the trial.
On August 8, 1995, Robinson was charged with one count of rape in the second degree and one count of unlawful imprisonment. The State alleged that on August 2, 1995, Robinson drove D.M. to the Northwoods Motel in Blaine where he raped her. At the end of the second day of trial, the court held Robinson's trial counsel in contempt for his disrespectful comments to the court outside the presence of the jury and ordered him to pay a $500 fine. The court then recessed for the day.
The next morning, the defense presented its final witness and rested. The court excused the jury while it heard the parties' exceptions to the proposed instructions. During these discussions, the court again held Robinson's trial counsel in contempt because of his disrespectful attitude to the court, and then recessed. Neither of the contempt citations was related to defense counsel's presentation of Robinson's defense. Both involved remarks he made in response to the court's rulings.
When the hearing resumed, the court explained for the record that Robinson's attorney told the bailiff when he left the courtroom after the second contempt citation that he was not coming back. The court called defense counsel's office to inform him that the jury was ready to proceed. Defense *99 counsel responded that he did not think he could proceed and was going to contact his own attorney. The court then told him that there was a trial to complete and ordered him back to court. The court added that he could bring his own attorney if he chose, and he responded that he would do his best. Jill Bernstein, who appeared on behalf of defense counsel when the hearing resumed, advised the court that he "wishes this Court no disrespect and wishes to do nothing but to advocate on behalf of his client and prepare and present his closing arguments today." She also stated for the record that she had asked defense counsel whether he needed a recess and he indicated he was ready to proceed. The proceedings resumed. At the conclusion of their deliberations, the jury found Robinson guilty on both counts.
A month later, Robinson appeared pro se before Judge Mura to ask that he be allowed to discharge his counsel, and an attorney from defense counsel's office appeared and asked that he be allowed to withdraw. Robinson also moved for a new trial, contending that he had received ineffective assistance of counsel and that his attorney had interfered with his right to testify on his own behalf. The court noted that Robinson had not filed a motion for a new trial within 10 days after the jury returned its verdict as required by CrR 7.6(b), but extended the deadline by an additional ten days, as permitted under the rule, to allow Robinson to file the motion. The court observed that defense counsel was capable and competent to file a motion for a new trial and that the contempt orders were based not on his presentation of the case but on his behavior outside the jury's presence. In light of Robinson's concerns, however, the court allowed defense counsel to withdraw and appointed the public defender as substitute counsel.
Substitute counsel for Robinson, Jon Ostlund, filed a timely motion for a new trial based on former counsel's alleged interference with his right to testify at trial. At the hearing on the motion, Ostlund admitted that former counsel and Robinson had discussed, as part of their trial strategy, the question whether Robinson should testify at trial and had agreed that he would not. Ostlund argued, however, that "things changed in this case when [former counsel] was twice found in contempt of court." After the second contempt citation, Ostlund explained, Robinson lost confidence in his attorney. Robinson's motion was supported by his own affidavit and by affidavits from former counsel and Bernstein, each of whom stated that Robinson had made his desire to testify known after the defense had rested. Former counsel's affidavit added that, because he was so upset about his interactions with the court, he "only wanted to get this case done with and not be in court in front of the trial judge anymore than absolutely necessary in this case." He therefore "refused to accede to [his] client's request and did not ask the court for permission to reopen the case and allow the defendant to testify as he demanded." At that point, Ostlund argued, Robinson's failure to take the stand was no longer the result of a tactical decision.
The trial court denied the motion for a new trial. It noted that no one had said anything to the court or its staff about Robinson's desire to change his earlier position and testify until after the jury returned its verdict. At a minimum, the court would have expected Robinson to say something when defense counsel proposed an instruction, after Robinson said he changed his mind, telling the jury it could not use his decision to remain silent against him. The court also noted that former counsel had delivered a good closing argument on Robinson's behalf and observed:
Mr. Robinson has had no problems expressing his own opinion contrary to statements of attorneys in the courtroom after the verdict is rendered and I think he would have been just as capable before the verdict was rendered.
The defense then filed a motion for reconsideration to which it attached two memoranda from defense investigator Michael D. Sparks regarding conversations he had with court security officers. That motion was also denied. The court again noted that Robinson was both articulate and assertive, and explained:
[H]e sat all the way through argument, sat here after argument, he was here before argument and when I was going over with *100 [former counsel] the matters he and I were addressing, there was never, ever an indication [that he wanted to testify].

DISCUSSION
A court may grant a new trial where it appears that one of the defendant's substantial rights was materially affected. CrR 7.6(a)(8). A trial court's ruling on a motion for a new trial will not be reversed on appeal absent an abuse of discretion.[2]
A defendant has a constitutional right to testify on his or her own behalf,[3] but that right is in tension with his constitutional right to remain silent. To assure that courts do not appear to be encouraging a defendant to waive his right to remain silent, they may not ask him whether he wants to testify.[4] Courts must also avoid intruding into the attorney-client relationship or disrupting trial strategy with a poorly timed interjection on the subject.[5] We therefore rely on defense counsel to inform the defendant of his constitutional right to testify or remain silent and on the defendant's conduct in not taking the stand as a valid waiver of his right to testify.[6]
Robinson not only failed to take the stand while the defense was presenting its case, but he also admits that he made a strategic decision to remain silent after consulting with his attorney. In other words, he admits he was well aware that he had a right to testify on his own behalf and concedes that the reason he did not testify was that he had chosen instead to exercise his right to remain silent. Thus, it is undisputed that Robinson waived his right to testify. In Thomas, the court observed that "the judge does not know the defendant is not testifying until the defense rests."[7] Once the defense rests, a court may therefore proceed on the assumption that the defendant has chosen to exercise his right to remain silent rather than his right to testify.[8]
The real question then is what was required to revoke that waiver after the defense had rested. We hold that if a defendant who has waived his right to testify does not bring his desire to change that decision to the court's attention until after trial, he must submit, in addition to his own testimony and that of his attorney, a description of what his testimony would have been had he testified. This is necessary to give the court a basis to determine whether the testimony would have made a difference to the outcome of the trial. If it would not, there is no prejudice and no need for a new trial.[9]
Here, it is undisputed that the court received no indication from Robinson that he wanted to change his earlier decision to waive his right to testify.[10] The court observed *101 that while Robinson had spoken up on a number of other occasions, he sat silently through the proceedings following the second contempt citation and informed neither the court nor anyone associated with his chambers that he wanted to testify. The record reflects that Robinson is articulate and assertive, so much so that he interrupted both the court and his own attorneys several times when he disagreed with something they said. Robinson's case, moreover, was tried not to the judge but to a jury, and the conduct that gave rise to the contempt citations occurred outside the presence of the jury. There was thus no reason for anyone to think that the presentation of the caseon which the trial court commended his former counselwas in any way compromised by the contempt citations. There was a valid waiver of his right to testify which Robinson sought to rescind only after the defense had rested. The court was therefore entitled to rely on that waiver absent any affirmative indication that the defendant wished to revoke it.
The question remains whether Robinson received ineffective assistance of counsel when his attorney failed to inform the court that he wanted to revoke his waiver and to testify. A defendant receives ineffective assistance of counsel if the attorney conduct at issue (1) falls below a minimum objective standard of reasonable attorney conduct, and (2) there is a reasonable probability that the outcome would have been different but for the attorney's conduct.[11] If defense counsel's conduct can be characterized as legitimate trial strategy or tactics, it cannot serve as a basis for a claim that the defendant did not receive effective assistance of counsel.[12]
Defense counsel's failure to pass on Robinson's request to the court fell below the standard. It cannot be characterized as legitimate trial strategy in light of his own admission that he did do so because he wanted to finish the trial as quickly as possible.[13] But Robinson has not met his burden of showing that there is a reasonable probability that the outcome would have been different but for his attorney's actions.[14] Robinson failed to make an offer of proof or to otherwise explain what the substance of his testimony would have been or how it would have changed the outcome of the trial.[15] There is no basis for concluding that the outcome would have been different but for counsel's deficient performance.[16]
Affirmed.
COX, J., concurs.
*102 ELLINGTON, Judge (concurring in part, dissenting in part).
I write separately to indicate my belief that the majority correctly invokes the prevailing rule: Where a defendant is prevented from testifying by his attorney's deficient performance, he or she should make an offer of proof outlining what the testimony would have been, so the trial court and then the reviewing court can assess its effect on the outcome. I would, however, remand for a hearing on that issue.
The right to testify is indeed fundamental, and is explicitly protected by the federal and state constitutions. See e.g., Rock v. Arkansas, 483 U.S. 44, 51-53, 107 S.Ct. 2704, 2708-10, 97 L.Ed.2d 37 (1987); State v. Thomas, 128 Wash.2d 553, 561-62, 910 P.2d 475 (1996); Wash. Const. art. 1, § 22. Robinson has established that his attorney prevented him from testifying. Robinson has thus established deficient performance. He argues that because the right to testify is fundamental, the attorney's conduct in preventing him from testifying is ineffective assistance per se, and that the usual showing of prejudice under Strickland[17] is unnecessary. For this proposition he relies on United States v. Butts, 630 F.Supp. 1145, 1148-49 (D.Me. 1986), which so held.
The per se rule adopted by Butts has, however, been criticized in a host of cases. See People v. Solomon, 220 Mich.App. 527, 560 N.W.2d 651, 656 (1996) (collecting cases and concluding Butts is an anomaly); State v. Arguelles, 921 P.2d 439, 442 (Utah 1996) (same); United States v. Tavares, 100 F.3d 995, 998 (D.C.Cir. 1996), cert. denied ___ U.S. ___, 117 S.Ct. 1344, 137 L.Ed.2d 502 (1997); LaVigne v. State,, 812 P.2d 217, 220 (Alaska 1991); State v. Flynn, 190 Wis.2d 31, 527 N.W.2d 343, 351-52(App.1994), rev. denied, 531 N.W.2d 326 (Wis. 1995), cert. denied, 514 U.S. 1030, 115 S.Ct. 1389, 131 L.Ed.2d 241 (1995). In all of these cases, and many others, courts have held that harmless error analysis applies to the denial of the right to testify.
In fact, we know of only one other jurisdiction that systematically requires a new trial whenever a defendant has been denied the right to testify. See State v. Walen, 563 N.W.2d 742, 751 n.4 (Minn. 1997) (citing State v. Rosillo, 281 N.W.2d 877, 879 (Minn. 1979), which relied on Seth Dawson, Due Process v. Defense Counsel's Unilateral Waiver of the Defendant's Right to Testify, 3 HASTINGS CONST.L.Q. 517 (1976)).
Division II of this court, however, recently appeared to align itself with that position. In re Detention of Haga, 87 Wash.App. 937, 943 P.2d 395 (1997) involved a civil commitment proceeding. Haga wished to testify about his honesty and the validity of some expert testimony. His attorney was opposed to this strategy, and expressed concerns about the proposed testimony's relevance as well as Haga's competence and ability to testify truthfully. The court refused to permit Haga to "override" his counsel's decision, and did not allow Haga to testify. Quoting People v. Robles, 2 Cal.3d 205, 215, 85 Cal. Rptr. 166, 466 P.2d 710 (1970), Division II stated that when `"a defendant insists that he wants to testify, he cannot be deprived of that opportunity."' Haga, 87 Wash.App. at 940, 943 P.2d 395.
The Haga court concluded that denial of such an opportunity is not subject to harmless error analysis, citing United States v. Martinez, 883 F.2d 750, 770 (9th Cir. 1989) and Luce v. United States, 469 U.S. 38, 42, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 (1984), for the proposition that it is difficult for an appellate court to analyze the impact of an error that causes a defendant not to testify. See Martinez, 883 F.2d at 770 (Reinhardt, J., dissenting);[18]Luce, 469 U.S. at 42, 105 S.Ct. at 463. The Luce court noted that an "appellate court could not logically term `harmless' an error that presumptively kept the defendant from testifying." Luce,, 469 U.S. at 42, 105 S.Ct. at 463. The issue in Luce was *103 whether a non-testifying defendant could seek reversal on the basis that the trial court improperly admitted impeachment evidence against him. The court held he could not, noting that without the substance of the defendant's testimony, no court could conclude what impact the potentially improper admission of impeachment evidence would have had. See Luce, 469 U.S. at 41-43, 105 S.Ct. at 463-64. This reasoning actually supports the majority here, implying as it does that when the substance of the defendant's testimony is available, such a question can indeed be evaluated.
As previously discussed, most courts hold that where a court prevents a defendant from testifying, reversal is required unless this constitutional error is harmless beyond a reasonable doubt. See e.g., Solomon, 560 N.W.2d at 655-56, and cases there cited; Ortega v. O'Leary, 843 F.2d 258, 262 (7th Cir. 1988); Wright v. Estelle, 549 F.2d 971, 974 (5th Cir. 1977), opinion adhered to on rehearing, 572 F.2d 1071 (5th Cir. 1978); see also State v. Jones 101 Wash.2d 113, 124-25, 677 P.2d 131 (1984) (erroneous admission of ER 609 impeachment evidence subject to constitutional harmless error analysis because of nexus with the right to testify). The court in Solomon relied particularly on the discussion in Arizona v. Fulminante, 499 U.S. 279, 308, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302(1991), wherein the United States Supreme Court reiterated that the harmless error doctrine is essential in focusing on the underlying fairness of the trial and the factual question of guilt or innocence. The Solomon court concluded, "We agree with the great weight of authority that has concluded that denial of the right to testify is a `trial error' [as opposed to a structural defect in the trial mechanism] and is thus subject to a harmless-error analysis." Solomon, 560 N.W.2d at 655.
I likewise agree. And it is not apparent why no inquiry should be made into the issue of prejudice where the defendant is prevented from testifying by his counsel, instead of by the court.
But a question does arise: What degree of prejudice need be shown, and by whom? In a constitutional error case, the State must prove the error is harmless beyond a reasonable doubt. In an ineffective assistance case, the defendant must demonstrate prejudice. The demonstration of prejudice in the ineffective assistance case is the logical equivalent of the harmless error analysis. Where the error of counsel deprives the defendant of a fundamental constitutional right, should the inquiry into prejudice become closer to the requirement of "harmless beyond a reasonable doubt"?
Other courts have examined this issue and concluded that the Strickland analysis requiring the defendant to demonstrate prejudice should be retained. See, e.g., Arguelles, 921 P.2d at 441-42 (collecting cases). The D.C. Circuit has announced a hybrid test for this precise circumstance, which seems to me an appropriate starting point. In determining whether counsel's deficient performance prejudiced the defendant, the court both recognizes the special significance of the defendant's precluded right to testify, and at the same time inquires whether it is reasonably probable that defendant's testimony would have changed the outcome. Tavares, 100 F.3d at 998.
In my view, however, the special significance of the defendant's right to testify should lessen the required showing of prejudice. That is, in the unusual case where the defendant can prove he was in fact prevented from testifying by his attorney, there need only be a reasonable possibilityas opposed to a reasonable probabilitythat the defendant's testimony would have changed the outcome. In close cases then, the right to testify should prevail.
But we cannot tell here what might have been the effect of Robinson's testimony, since defendant made no showing regarding his precluded testimony. We therefore cannot resolve the issue on this record.
Robinson points out, however, that the proceedings below gave him no clear opportunity to make such an offer of proof. Although Robinson's theories included ineffective assistance of counsel, the trial court denied his motion without determining whether his attorney was ineffective, finding that Robinson had an obligation *104 to bring his desires to the attention of the courtessentially relying on Robinson's original waiver. The prejudice question was therefore not squarely addressed. Because the trial court is in the best position to evaluate the offer of proof, I would remand for determination of whether Robinson's proposed testimony presents a reasonable possibility of a different outcome.
I thus concur with the majority in its rejection of a per se rule, but would reach a different disposition, and so dissent to the extent the majority declines to remand.
NOTES
[1] Counsel on appeal was not trial counsel.
[2] State v. Copeland, 130 Wash.2d 244, 294, 922 P.2d 1304 (1996); State v. Dawkins, 71 Wash. App. 902, 907, 863 P.2d 124 (1993).
[3] State v. Thomas, 128 Wash.2d 553, 556, 910 P.2d 475 (1996).
[4] Thomas, 128 Wash.2d at 557, 560, 910 P.2d 475; In re Personal Restraint of Lord, 123 Wash.2d 296, 317, 868 P.2d 835 (1994).
[5] Thomas, 128 Wash.2d at 560, 910 P.2d 475; Lord, 123 Wash.2d at 317, 868 P.2d 835.
[6] Thomas, 128 Wash.2d at 559-60, 910 P.2d 475.
[7] Thomas, 128 Wash.2d at 560, 910 P.2d 475 (citing United States v. Martinez, 883 F.2d 750, 760 (9th Cir.1989), vacated on other grounds, 928 F.2d 1470, cert. denied, 501 U.S. 1249, 111 S.Ct. 2886, 115 L.Ed.2d 1052 (1991)).
[8] See Martinez, 883 F.2d at 756 (right to remain silent is more zealously guarded than the right to testify); Ortega v. O'Leary, 843 F.2d 258, 261 (7th Cir.) (although a defendant's right to testify is fundamental, there are limitations on its exercise such as the accommodation of legitimate interests in the trial process), cert. denied, 488 U.S. 841, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988); Thomas, 128 Wash.2d at 558-59, 910 P.2d 475.
[9] See State v. Peyton, 29 Wash.App. 701, 718, 630 P.2d 1362 (no ineffective assistance of counsel claim based on attorney's alleged refusal to allow defendants to testify absent an offer of proof or other indication of what the substance of their testimony would have been), review denied, 96 Wash.2d 1024 (1981). See also Ortega, 843 F.2d at 262 (applying harmless error test where court refused to allow defendant to testify even though he asserted his wish to do so during trial).
[10] In re Detention of Haga, 87 Wash.App. 937, 943 P.2d 395 (1997), is distinguishable. In Haga, the defendant made an unequivocal demand to testify during presentation of the defense case. Here, in contrast, Robinson did not assert his right to testify until after the defense had rested. We note that the court in People v. Alcala, 4 Cal. 4th 742, 805-06, 15 Cal.Rptr.2d 432, 842 P.2d 1192(1992), cert. denied, 510 U.S. 877, 114 S.Ct. 215, 126 L.Ed.2d 171 (1993), a case cited in Haga, agreed with the position we are taking here. It held that, where the record fails to disclose a timely demand to testify, reversal may not be predicated on a claim that the defendant was deprived of his right to testify. See Haga, 87 Wash.App. at 940, 943 P.2d 395.
[11] State v. Benn, 120 Wash.2d 631, 663, 845 P.2d 289 (citing Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064-65, 80 L.Ed.2d 674 (1984)), cert. denied. 510 U.S. 944, 114 S.Ct. 382, 126 L.Ed.2d 331 (1993).
[12] State v. Ray, 116 Wash.2d 531, 548, 806 P.2d 1220 (1991).
[13] It is worth noting that although Robinson's attorney apparently failed to consider them, there may also have been valid strategic reasons for not reopening the defense case, especially since the entire defense strategydeveloped when neither counsel nor his client were upset was premised on Robinson's remaining silent.
[14] State v. Hendrickson, 129 Wash.2d 61, 78, 917 P.2d 563 (1996).
[15] Peyton, 29 Wash.App. at 718, 630 P.2d 1362.
[16] Neither of the issues raised in Robinson's pro se brief has merit. Robinson first argues that the fact that he apologized after the first assault made any evidence of that assault inadmissible. There is no legal doctrine or statute that gives an apology the significance Robinson would assign it. Uncharged criminal activity, moreover, is admissible under exceptions to ER 404(b) (evidence of other wrongs is admissible to show preparation or plan). Robinson's contention that there is insufficient evidence to establish that the victim was placed in fear of physical injury is also without merit. The victim testified that Robinson struck her multiple times and punched her in the face when she attempted to leave the motel room, forced her to take off her clothes, threatened her verbally, and forced her to consume alcohol and to perform sex acts. She also testified that she thought he had a weapon and did not try to escape because she feared he was nearby at all times.
[17] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[18] Although not identified as such in the opinion, the Haga court relied on the dissent in Martinez, which, along with the majority opinion, has been vacated. Haga, 87 Wash.App. at 940, 943 P.2d 395 (citing United States v. Martinez, 883 F.2d 750, 770 (9th Cir. 1989) (Reinhardt, J., dissenting), vacated by, 928 F.2d 1470 (9th Cir. 1991)).