# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

LESLIE WAYNE MCGINNIS,

       Defendant-Appellant.

UNPUBLISHED
September 10, 2015

No. 320629
Wayne Circuit Court
LC No. 13-005757-FH

Before: TALBOT, C.J., and WILDER and FORT HOOD, JJ.

PER CURIAM.

Leslie Wayne McGinnis appeals as of right his jury trial convictions of unarmed robbery[1] and unlawful imprisonment.[2] The trial court sentenced McGinnis, as a fourth habitual offender,[3] to concurrent terms of 200 to 600 months imprisonment. We affirm.

## I. FACTS AND PROCEEDINGS

McGinnis's convictions arise from the robbery of a 7-Eleven store in Trenton, Michigan, during the early morning hours of June 10, 2013. According to the store clerk, Danielle Nine, a man with a bandana over the lower part of his face entered the store and demanded money from the cash register. She gave him the drawer from the register. He then ordered her into a back room of the store, where he bound her hands with duct tape and placed duct tape over her mouth and eyes. She was able to free herself from the duct tape and call the police. Nine saw a Volkswagen leaving the parking lot. Police, responding to a dispatch broadcast regarding the robbery, encountered a Volkswagen leaving the area of the store and stopped the vehicle. McGinnis was driving the Volkswagen, and no other vehicles were in the area. In response to a question from Officer Timothy Fox, McGinnis stated that he was out that night "[t]ryin' to get some money." When Fox later remarked to another officer that McGinnis's car was coming from the direction of the 7-Eleven store, McGinnis spontaneously remarked, "Yep, that's where I

---

[1] MCL 750.530.

[2] MCL 750.349b.

[3] MCL 769.12.

-1-

was." On the ride to the police station, McGinnis spontaneously made additional comments such as, "I can't believe I was so stupid. I'm goin' back to jail." The cash register drawer was found inside McGinnis's vehicle, and a bandana was found in McGinnis's pocket.

Nine was not asked to identify McGinnis in a lineup. Nine testified at McGinnis's preliminary examination and identified McGinnis as the robber. McGinnis's trial counsel, Robert Plumpe, moved to exclude McGinnis's statements made during and after his arrest, physical evidence seized from McGinnis's vehicle, and Nine's identification testimony. The trial court excluded McGinnis's initial statement made while he was being handcuffed (that he was out "[t]ryin' to get some money"), but denied the remaining motions.

## II. ISSUES RAISED BY APPELLATE COUNSEL

### A. SUPPRESSION OF PHYSICAL EVIDENCE

McGinnis argues that the trial court erred in denying his motion to suppress the cash register drawer seized from his vehicle. "We review for clear error a trial court's findings of fact at a suppression hearing, but we review de novo its ultimate decision on a motion to suppress."[4] "A ruling is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake."[5]

The trial court suppressed McGinnis's initial statement to Fox in which McGinnis responded that he was out "[t]ryin' to get some money" because the statement was made during a custodial interrogation without McGinnis having been advised of his *Miranda*[6] rights. McGinnis argues that the trial court erred by also refusing to suppress the cash register drawer seized from his vehicle as the fruit of the illegal custodial interrogation. According to McGinnis, if he had not made the statement about getting money, police would not have had probable cause to arrest him, and thus, would not have been permitted to search his car. McGinnis's argument is both legally incorrect and factually unsupported.

In *United States v Patane*, a majority of the United States Supreme Court concluded that where the police fail to give *Miranda* warnings before questioning a suspect during a custodial interrogation, and later obtain physical evidence as a fruit of the unwarned interrogation, it is not necessary to suppress the physical evidence because "[i]ntroduction of the nontestimonial fruit of a voluntary statement, such as respondent's Glock, does not implicate the Self-Incrimination Clause."[7] Thus, even assuming the cash register drawer was obtained as the fruit of a *Miranda* violation, suppression of the drawer would not be warranted.

---

[4] *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009).

[5] *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012) (quotation omitted).

[6] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[7] *United States v Patane*, 542 US 630, 643; 124 S Ct 2620; 159 L Ed 2d 667 (2004).

Moreover, McGinnis's argument is factually incorrect because there was sufficient evidence beyond McGinnis's suppressed statement to support his arrest. An arrest is proper where an officer has "probable cause to believe that an offense has occurred and that the defendant has committed it."[8] Whether probable cause exists is evaluated by considering the facts available to an arresting officer the moment of arrest, and is "determined by the totality of the circumstances."[9] Probable cause exists if the circumstances would "justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony."[10] Fox was clearly aware that a felony had been committed; the only question was whether McGinnis had committed the crime. Fox observed McGinnis driving away from the scene of the crime shortly after the crime was committed, in a vehicle matching the description of the vehicle witnessed by Nine. McGinnis's spontaneous statement, "Yep I was there," confirmed that he was at the crime scene. There were also no other vehicles observed in the area at the time. These facts easily provided sufficient probable cause to believe that McGinnis was the individual who committed the crime. Accordingly, the court did not err in denying McGinnis's motion to suppress the physical evidence.

McGinnis also suggests that the trial court erred by failing to suppress the additional statements he made without prompting from officers. McGinnis offers no explanation of his position. McGinnis may not announce his position and leave it to this Court to unravel his argument.[11] Regardless, as these statements were spontaneous statements not made in response to questioning by police or its functional equivalent, the statements were not obtained in violation of *Miranda*.[12]

## B. SCORING OF OFFENSE VARIABLE 7

McGinnis argues that the trial court erred in scoring 50 points for offense variable (OV) 7 of the sentencing guidelines. We disagree. "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence."[13] "Whether the facts, as found, are adequate to satisfy the scoring conditions

---

[8] *People v Nguyen*, 305 Mich App 740, 751; 854 NW2d 223 (2014).

[9] *Id*. at 751-752.

[10] *Id*.

[11] *People v Kammeraad*, 307 Mich App 98, 143; 858 NW2d 490 (2014).

[12] See *Rhode Island v Innis*, 446 US 291, 299-303; 100 S Ct 1682; 64 L Ed 2d 297 (1980) (where a defendant responds to dialogue between officers that the officers could not reasonably expect to elicit an incriminating response, no *Miranda* violation occurs).

[13] *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo."[14]

MCL 777.37 addresses aggravated physical abuse. The statute provides that 50 points are to be assessed for OV 7 when "[a] victim was treated with sadism, torture, or excessive brutality *or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense*."[15] Our Supreme Court has analyzed the meaning of the emphasized statutory language:

> The phrase begins with the words "conduct designed." "Designed" means "to intend for a definite purpose." Thus, the word "designed" requires courts to evaluate the intent motivating the defendant's conduct. Next, we come to the words "substantially increase." "Substantial" means "of ample or considerable amount, quantity, size, etc." To "increase" means "to make greater, as in number, size, strength, or quality; augment." Applying these definitions to the relevant text, we conclude that it is proper to assess points under OV 7 for conduct that was intended to make a victim's fear or anxiety greater by a considerable amount.[16]

The probation department recommended that the trial court assign no points to OV 7. However, the prosecutor requested that the trial court assign 50 points to this variable based on McGinnis's conduct in taking Nine to a back room and restraining her with tape. The trial court agreed with the prosecutor. "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable."[17] Here, the trial court reasonably inferred that McGinnis intended to increase Nine's fear when, instead of simply leaving the store with the stolen money, he ordered her to a secluded area and used duct tape to blind her, silence her, and immobilize her hands. The circumstances are sufficient to support the 50-point score for OV 7.

---

[14] *Id*. We are aware that our Supreme Court has recently concluded that Michigan's sentencing guidelines are unconstitutional to the extent that the guidelines "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range . . . ." *People v Lockridge*, ___ Mich ___, ___; ___ NW2d ___ (2015) (slip op at 1-2). However, McGinnis has not raised a claim under *Lockridge*. Thus, we do not consider what effect *Lockridge* has on this matter.

[15] MCL 777.37(1)(a) (emphasis added).

[16] *Hardy*, 494 Mich at 440-441 (citations and internal quotations omitted).

[17] *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014).

## C. MOTION FOR A DIRECTED VERDICT

McGinnis argues that the trial court erred by denying his motion for a directed verdict, made at the close of the prosecutor's case. We disagree. To assess such a motion, the trial court "must consider the evidence presented by the prosecution to the time the motion is made and in a light most favorable to the prosecution."[18] The question to be answered is "whether the evidence, viewed in the light most favorable to the prosecution, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt."[19] "We review de novo a trial court's decision whether to deny a motion for a directed verdict."[20]

McGinnis argues that the prosecutor did not present evidence sufficient to persuade a rational fact-finder that he was the man who committed the robbery. "[I]t is well settled that identity is an element of every offense."[21] Nine identified McGinnis as the person who robbed her and bound her with duct tape. She explained that although McGinnis's face was covered below the eyes with a bandana, she had a good look at his eyes and the top of his head. She made the specific observation that his hair was black and gray, and tied back in a ponytail. She recognized that McGinnis was old. Nine had an unobstructed view of McGinnis in the lighted area of the store before he took her to the back room. In addition, when Fox responded to the call from dispatch, he encountered McGinnis driving away from the store. McGinnis was driving a Volkswagen, the same make of car that Nine observed. There was no other traffic in the area. Fox observed that McGinnis's hair was in a ponytail. More significantly, McGinnis's car contained the stolen cash register drawer, and McGinnis had a bandana in his pocket. The evidence easily supports the jury's conclusion that McGinnis was the man who committed the robbery.

McGinnis disputes whether the above testimony was credible or was outweighed by other evidence. Such issues were for the trier of fact to resolve, not for the trial court to decide on a motion for a directed verdict,[22] or for this Court to decide on appeal.[23]

## III. ISSUES RAISED IN DEFENDANT'S STANDARD 4 BRIEF

### A. NINE'S IDENTIFICATION TESTIMONY

McGinnis first raises three issues related to Nine's identification of McGinnis at the preliminary examination.[24] McGinnis argues that Nine's in-court identification was

---

[18] *People v Wilder*, 307 Mich App 546, 558; 861 NW2d 645 (2014) (quotation marks, brackets, and citation omitted).

[19] *People v Parker*, 288 Mich App 500, 504; 795 NW2d 596 (2010).

[20] *People v Chelmicki*, 305 Mich App 58, 64; 850 NW2d 612 (2014).

[21] *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

[22] *People v Mehall*, 454 Mich 1, 6; 557 NW2d 110 (1997).

[23] *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).

impermissibly suggestive. McGinnis argues that because the preliminary examination was flawed in this manner, the bindover was invalid, rendering the circuit court without jurisdiction. He also argues that counsel was ineffective for failing to contest the admission of Nine's testimony or seek dismissal of the charges. We disagree with each of these contentions.

A trial court's decision to admit an in-court identification will not be reversed on appeal unless the decision is clearly erroneous.[25] Whether a court has jurisdiction over a matter is a question of law reviewed de novo.[26]

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law."[27] The trial court's factual findings, if any, are reviewed for clear error, while the ultimate issue of whether counsel was constitutionally ineffective is reviewed de novo.[28] To establish ineffective assistance of counsel, McGinnis must demonstrate "(1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant."[29] "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different."[30] McGinnis must also overcome "the strong presumption that defense counsel's decisions constituted sound trial strategy."[31] And because McGinnis did not preserve this or any of his claims of ineffective assistance of counsel by moving for a new trial or a *Ginther*[32] hearing in the trial court, our review is limited to the existing record.[33]

As this Court has explained:

> If a witness is exposed to an impermissibly suggestive pretrial identification procedure, the witness' in-court identification will not be allowed unless the

---

[24] While McGinnis presents these issues as three separate questions presented, he discusses the issues collectively. We do the same.

[25] *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998).

[26] *People v Laws*, 218 Mich App 447, 451; 554 NW2d 586 (1996).

[27] *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

[28] *Id*.

[29] *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012).

[30] *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013).

[31] *Heft*, 299 Mich App at 83.

[32] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[33] *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). McGinnis claims that he did file such a motion in the trial court. While it appears McGinnis prepared such a motion, it does not appear that the motion was ever properly filed. But even if the motion had been properly filed, because no evidentiary hearing was ever held, our review would still be limited to the existing record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

prosecution shows by clear and convincing evidence that the in-court identification will be based on a sufficiently independent basis to purge the taint of the illegal identification. The defendant must show that in light of the totality of the circumstances, the procedure used was so impermissibly suggestive as to have led to a substantial likelihood of misidentification. Simply because an identification procedure is suggestive does not mean it is necessarily constitutionally defective. The fact that the prior confrontation occurred during the preliminary examination, as opposed to a pretrial lineup or showup, does not necessarily mean that it cannot be considered unduly suggestive. When examining the totality of the circumstances, relevant factors include: the opportunity for the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of a prior description, the witness' level of certainty at the pretrial identification procedure, and the length of time between the crime and the confrontation.[34]

McGinnis argues that Nine's identification of him at the preliminary examination was unduly suggestive because he was wearing prison garb and was the only person presented for Nine to identify. Certainly, these circumstances would create a suggestive atmosphere.[35] However, it does not necessarily follow that Nine's identification of McGinnis was constitutionally defective; McGinnis must demonstrate that there was a substantial likelihood of misidentification. Under the circumstances, McGinnis cannot make such a showing. Nine was able to view McGinnis during the robbery. She paid close attention to his appearance and gave an accurate description to police immediately after the robbery. At the preliminary examination, Nine expressed no uncertainty regarding whether she correctly identified McGinnis. The preliminary examination was also held approximately two weeks after the robbery, "which is a relatively short span of time[] that does not reduce the reliability of the identification."[36] Under the circumstances, Nine's identification of McGinnis at the preliminary examination was not constitutionally defective.[37]

But even if the trial court erred by failing to exclude Nine's identification testimony at the preliminary examination, reversal would not be warranted because any potential error was harmless beyond a reasonable doubt.[38] Nine's testimony was only part of the identification evidence presented at the preliminary examination. Fox also provided substantial testimony

[34] *Colon*, 233 Mich App at 304-305.

[35] See *id*. at 305 ("Here, there is no question that the preliminary examination was a suggestive atmosphere in that defendant was placed in the courtroom in prison garb.").

[36] *Id*. at 305 (quotation marks and citation omitted).

[37] *See id*. at 304-305.

[38] See *People v Solomon*, 220 Mich App 527, 531; 560 NW2d 651 (1996) (although identification testimony "raise[d] reliability concerns, any error would warrant reversal only if it was not harmless beyond a reasonable doubt.").

providing circumstantial evidence that McGinnis was the individual that committed the robbery. This evidence alone was sufficient to bind over McGinnis.[39]

Because the trial court did not err by admitting Nine's testimony, counsel was not ineffective for failing to raise an objection or seek dismissal of the charges on this basis.[40] Nor could the failure to object be considered prejudicial, given the other substantial evidence of McGinnis's identity presented at the preliminary examination. We also reject McGinnis's contention that the admission of Nine's testimony created a jurisdictional defect. While no error occurred at the preliminary examination, we note that "[i]f a defendant is fairly convicted at trial, no appeal lies regarding whether the evidence at the preliminary examination was sufficient to warrant a bindover."[41] As is explained throughout this opinion, McGinnis was fairly convicted at trial, and thus, no appeal is available on the basis that the evidence presented at the preliminary examination was insufficient.

### B. LACK OF PREPARATION

McGinnis next argues that he was denied the right to counsel or received ineffective assistance of counsel because trial counsel was not given adequate time to prepare to defend him. The record simply does not support McGinnis's argument. The record demonstrates that both of McGinnis's appointed attorneys actively participated in the proceedings. Moreover, McGinnis's counsel filed various motions to suppress evidence, motions that were partially successful. There is nothing in the record that would suggest that these attorneys were unprepared or unable to provide effective assistance to McGinnis. Accordingly, McGinnis is not entitled to relief.

### C. FAILURE TO INVESTIGATE, CALL WITNESSES, AND FILE MOTIONS

McGinnis next argues that his appointed attorneys were ineffective for failing to adequately investigate the case, call necessary witnesses, or file various motions. We disagree.

Defense counsel has a duty to conduct a reasonable investigation, and failure to do so can amount to ineffective assistance of counsel.[42] However, an attorney's failure to investigate can be sound trial strategy, as long as the strategy is reasonable.[43] McGinnis complains that his attorneys failed to pursue his suggestion to obtain his medical records to prove that he has a physical disability that would have prevented him from committing the charged crimes.

---

[39] See *People v Yost*, 468 Mich 122, 125-126; 659 NW2d 604 (2003) (explaining that to bind over a defendant at the preliminary examination stage, the trial court must be presented with evidence establishing probable cause to believe the defendant committed the crime charged).

[40] *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

[41] *People v Wilson*, 469 Mich 1018, 1018; 677 NW2d 29 (2004).

[42] *People v Trakhtenberg*, 493 Mich 38, 52-55; 826 NW2d 136 (2012).

[43] *Id.* at 52.

However, there is no record evidence that McGinnis had any physical limitations that would have prevented him from committing the offense. Moreover, Nine testified that she heard a car leave the store's parking lot five minutes after McGinnis left. Fox believed that the car leaving the 7-Eleven area within minutes of the dispatch was the perpetrator's vehicle. Defense counsel argued in closing argument that McGinnis was not the perpetrator because the perpetrator would not have remained at the crime scene 10 minutes after the robbery was committed. Evidence that McGinnis had a medical disability or other physical limitations might have explained his delay in leaving, and thereby negated counsel's attempt to utilize the passage of time to undermine the prosecutor's evidence. Accordingly, McGinnis has not established that failure to present evidence of a medical disability was objectively unreasonable.

McGinnis complains that defense counsel failed to locate other witnesses. However, there is no record evidence of any other witness who could have given favorable testimony for McGinnis. McGinnis also contends that his attorney should have investigated whether the taillights on his vehicle were malfunctioning. Whether the taillights were functioning was potentially relevant because Fox testified that the Volkswagen's taillights were off, and that he could have stopped McGinnis for this reason. However, Fox testified that the taillight issue was not the reason he stopped McGinnis's vehicle. The traffic stop was a legal stop regardless of the taillights because Fox had a "reasonably articulable suspicion" that defendant was engaged in criminal activity, given that his vehicle was seen leaving the 7-Eleven store moments after the robbery, it was the only vehicle in the area, and it matched the description of the vehicle observed leaving the store.[44] There was no need for counsel to conduct further investigation.

McGinnis argues that counsel was ineffective for failing to file various motions challenging the admission of Nine's identification testimony and of the cash register drawer. As discussed, the trial court did not err by admitting Nine's testimony or the cash register drawer. Failing to file futile motions does not amount to ineffective assistance of counsel.[45]

## D. PRIOR CONVICTIONS

McGinnis next argues that the trial court denied him the right to challenge his prior convictions pursuant to MCL 769.13, and that counsel was ineffective for raising any such challenge. Pursuant to MCL 769.13, a defendant "may challenge the accuracy or constitutional validity" of prior convictions.[46] At sentencing, McGinnis explained that he was not informed of his rights to call witnesses and testify during preliminary examinations held in his prior criminal proceedings, and argued that his prior convictions were constitutionally invalid. However, he presented no evidence supporting his assertions. "The defendant shall bear the burden of establishing a prima facie showing that an alleged prior conviction is . . . constitutionally invalid."[47] McGinnis made no such showing, and accordingly, the trial court did not err by

---

[44] See *People v Oliver*, 464 Mich 184, 191; 627 NW2d 297 (2001).

[45] *Ericksen*, 288 Mich App at 201.

[46] MCL 769.13(4).

[47] MCL 769.13(6).

failing to further consider the challenge. And because there is no basis for concluding that his attorney could have successfully challenged a prior conviction, McGinnis's claim of ineffective assistance of counsel claim must fail.

## E. SEARCH AND SEIZURE

McGinnis next argues that his arrest was not based on adequate probable cause, and that the trial court erred by failing to suppress the cash register because it was obtained as the result of a *Miranda* violation. As was discussed in section II(A), even absent the statement found to have been obtained in violation of *Miranda*, probable cause existed to arrest McGinnis. As was also explained, the trial court did not err by failing to suppress the cash register drawer. Accordingly, McGinnis's argument lacks merit.

## F. SUFFICIENCY OF THE EVIDENCE

Finally, McGinnis argues that there was insufficient evidence to support his convictions. McGinnis argues that Nine's identification testimony should not have been admitted at trial because it was the result of an impermissibly suggestive identification. He argues that without this testimony, there was insufficient evidence to identify McGinnis as the robber. As discussed in section III(A), Nine's identification of McGinnis at the preliminary examination was not constitutionally defective. And for the same reasons discussed in section II(C), sufficient evidence was presented to identify McGinnis as the robber. Accordingly, McGinnis's argument lacks merit.

Affirmed.

/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Karen M. Fort Hood

-10-