*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BRIAN OMAR HAYWOOD,

Defendant-Appellant.

UNPUBLISHED
December 3, 2019

No. 342729
Kalamazoo Circuit Court
LC No. 2016-001743-FH

Before: CAVANAGH, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for assault with a dangerous weapon (felonious assault), MCL 750.82, intentional discharge of firearm at dwelling or occupied structure, MCL 750.234b, and two counts of possession of firearm when committing or attempting to commit felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 16 months to 20 years' imprisonment for the intentional discharge of a firearm conviction, 12 months to 8 years' imprisonment for the felonious assault conviction, and two years for each count of felony-firearm. We affirm.

## I. BACKGROUND

Defendant's convictions arise from the shooting of Robert Crabtree on December 15, 2016, at the apartments located at 1108 Westnedge in the city of Kalamazoo. The building where the shooting occurred contained five apartments. Several residents who were related either to the defendant or his ex-wife lived there. At the time, Crabtree, also known as "Tony" or "Tone," was living in an apartment with the defendant's ex-wife Janet Owen Haywood, Janet's younger brother Dillion Owen and Crabtree's nephew Jon Mouser who was also Janet's boyfriend, and Mouser's mother, Donna Mouser. On the night of the shooting, the defendant, who lived in the building with his mother Janey Garcia, and his then girlfriend Nicole Girton, were socializing with an un-related tenant, John Green and his girlfriend when loud voices were heard in the hallway. There were many witnesses to the subsequent events and many different versions of how and when Crabtree was shot.

The prosecution's factual theory was that the defendant became involved in a physical altercation with Mouser and Crabtree, and after that altercation, the defendant retrieved a gun stored in the cellar of the apartment building. The prosecution argued that defendant then fired shots into the sidewalk and charged up the apartment's interior stairwell aiming to display the weapon in order to threaten Mouser and Crabtree. In this process, the gun defendant was holding discharged a bullet into Crabtree's arm. None of the witnesses' testimony entirely supported the prosecution's factual theory of the case. However, each aspect of the theory was supported by witness testimony. Some of the witnesses ascribed their lack of clear memory of the incident to the consumption of alcohol, marijuana or prescription medications. Crabtree identified the defendant as his shooter and gave testimony consistent with the prosecution's factual theory that the defendant charged up the steps of the apartment brandishing a weapon. Green testified that the defendant left his apartment with Girton after hearing a commotion in the hallway. Green further attested that he heard sounds consistent with a scuffle followed by a person's footsteps descending the stairway. Shortly afterwards, Green heard shots or firecracker sounds outside the building, footsteps rapidly ascending the stairway, and a final shot inside the building hallway. Green also testified that he had seen the defendant with a semi-automatic weapon either weeks or months before the incident. Paula Handrich, defendant's former mother-in-law, asserted that her memory of the events of the incident was poor in part because of the stress of the event. She recalled the defendant, shortly after shots were fired, coming to her apartment for access to a doorway leading out of the building. Green and Dillon averred that they heard Janet say, "Brian don't," before the interior shot was fired. Even those witnesses with the most scant memories agreed that the defendant was at the building that night. It was also undisputed that defendant left the building and ensconced himself in a basement on nearby Den Adel street where the police ultimately coaxed him into surrender.

Defendant was interviewed by two different officers, Officer Charles Mason and Officer Caleb Leonard. The officers realized partially through Leonard's interview that the interviews were not being recorded. The recording device was then engaged and a record was made of the remaining portion of the interview. Defendant moved to suppress his statement to the officers due to violation of his *Miranda*[1] rights. The court denied the motion after a *Walker*[2] hearing. Mid-trial, defendant made a half-hearted motion. At that time, defendant also asked for new counsel. The court declined both requests.

The defense presented testimony from Girton that the defendant was attacked by Janet, Mouser and Crabtree, and during that scuffle a single shot was fired but not by the defendant. Defendant began testifying on December 6 but failed to appear on December 7, and an arrest warrant was issued. The court excused the jury and adjourned to January 3. In the interim, defendant was arrested in Illinois where he fought extradition. On January 3, the court was apprised of his arrest and the fact that his extradition hearing was not scheduled until January 11. Defense counsel requested an adjournment, which the court denied. The court ordered the defendant's testimony to be stricken. In its final instructions, the court instructed the jury that

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] *People v Walker*, 374 Mich 331, 334; 132 NW2d 87 (1965).

the testimony was to be stricken and that they were to draw no inference from the defendant's absence at trial. Defendant was convicted as charged of all counts.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

We review de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "Taking the evidence in the light most favorable to the prosecution, the question on appeal is whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002). "Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime." *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010) (citation and alteration omitted). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *Hardiman*, 466 Mich at 428.

### B. ANALYSIS

Due process requires that evidence of every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). The elements of felonious assault are: "(1) an assault, (2) with a dangerous weapon, and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery." MCL 750.82(1); *People v Chambers*, 277 Mich App 1, 8; 742 NW2d 610 (2007). "An assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery." *People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004) (citation and quotation marks omitted). A battery is the "intentional, unconsented and harmful or offensive touching of another, or of something closely connected with the person." *Id*. A gun is a dangerous weapon. *People v Parker*, 417 Mich 556, 565; 339 NW2d 455 (1983).

On appeal, defendant only argues that he lacked the requisite intent to injure or place Crabtree in reasonable apprehension of an immediate battery.

"Felonious assault is a specific intent crime requiring either an intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery." *People v River*a, 120 Mich App 50, 54; 327 NW2d 386 (1982). "Because the law recognizes the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to sustain a conclusion that a defendant entertained the requisite intent." *People v Strong*, 143 Mich App 442, 452; 372 NW2d 335 (1985). "Intent may be inferred from all the facts and circumstances." *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011). "The jury may draw the inference as to the intent with which a particular act was done as they draw all other inferences, from any fact in evidence which to their minds fully proves its existence." *Strong*, 143 Mich App at 452.

There was sufficient evidence in the record to support the jury's determination that the defendant was the shooter and that when he fired the shot he had the intent to place someone in reasonable apprehension of an immediate battery. Crabtree identified the defendant as his assailant and that testimony, alone is sufficient if believed to support a jury's finding that defendant was the shooter. However, the record also includes circumstantial evidence that the defendant fired the shot such as Janet saying, "Brian don't," just prior to the firing of the weapon and Green's testimony that he had seen the defendant with a semi-automatic weapon within weeks or months before the incident. Additionally, the defendant fled the scene, which implies guilty knowledge. The evidence on intent comes from the defendant's interviews with the police. In those interviews, he admitted retrieving and brandishing the weapon with the intent to place his former combatants in fear of an immediate battery.

## III. MOTION TO SUPPRESS

## A. STANDARD OF REVIEW

We review a trial court's findings of fact on a motion to suppress for clear error. *People v Oliver*, 464 Mich 184, 191; 627 NW2d 297 (2001). "A finding is clearly erroneous if, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Coomer*, 245 Mich App 206, 219; 627 NW2d 612 (2001). "To the extent that a trial court's ruling on a motion to suppress involves an interpretation of the law or the application of a constitutional standard to uncontested facts, our review is de novo." *People v Attebury*, 463 Mich 662, 668; 624 NW2d 912 (2001).

## B. ANALYSIS

Defendant first argues that he was not given his *Miranda* rights by either Officer Mason or Officer Leonard before he was interrogated. However, he admits that someone read him his rights at the time of his arrest at the Den Adel address. He infers that he was entitled to a reiteration of those rights by either Mason or Leonard. He offers no authority for this proposition. Nonetheless, Mason testified that he did reiterate the *Miranda* warnings at the Kalamazoo Public Safety Headquarters and the court found his testimony credible. We defer to the trial judge's credibility findings. "Resolution of facts about which there is conflicting testimony is a decision to be made initially by the trial court." *People v Burrell*, 417 Mich 439, 448; 339 NW2d 403 (1983). "This is particularly true where a factual issue involves the credibility of the witnesses whose testimony is in conflict." *Id.*

Defendant next argues that his statement, "I'm done; I told you what I know," was an invocation of his right to remain silent.

*Miranda* requires that the defendant "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 US at 479. "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Id.* at 473-474. However, "[t]he defendant may waive effectuation of

these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id*. at 444. "To establish a valid waiver, the state must present evidence sufficient to demonstrate that the accused understood that he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against him." *People v Daoud*, 462 Mich 621, 637; 614 NW2d 152 (2000). A defendant's invocation of his right to remain silent must be unequivocal and unambiguous. *Berghuis v Thompkins*, 560 US 370, 381-382; 130 S Ct 2250; 176 L Ed 2d 1098 (2010).

" 'Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waives his Fifth Amendment rights.' " *People v Abraham*, 234 Mich App 640, 644; 599 NW2d 736 (1999), quoting *People v Howard*, 226 Mich App 528, 538; 575 NW2d 16 (1997). "Whether a defendant's statement was knowing, intelligent, and voluntary is a question of law, which the court must determine under the totality of the circumstances." *People v Tierney*, 266 Mich App 687, 707; 703 NW2d 204 (2005). "A confession or waiver of constitutional rights must be made without intimidation, coercion, or deception" but rather "must be the product of an essentially free and unconstrained choice by its maker." *People v Akins*, 259 Mich App 545, 564; 675 NW2d 863 (2003). "[F]ull comprehension of the rights to remain silent and request an attorney are sufficient to dispel whatever coercion is inherent in the interrogation process." *Moran v Burbine*, 475 US 412, 427; 106 S Ct 1135; 89 L Ed 2d 410 (1986).

Defendant makes several arguments as to why his statement should have been suppressed under *Miranda*. Defendant first argues that he invoked his right to remain silent in the unrecorded portion of his interview. Mason and Leonard both testified that defendant never indicated that he wanted the interview to stop. The court found the officers' testimony more credible on this issue. Again, we defer to the trial court's credibility assessment and finding. *Burrell*, 417 Mich at 448. Further, defendant's statement, "I'm done; I told you what I know," was not an unambiguous invocation of the right to remain silent where it could have been interpreted as either defendant being done telling his side of the story or that he wanted the interview to end.

Next, defendant argues that the statements he did give were coerced because Leonard "yelled at him, threatened him, and pushed him for two and a half hours." Defendant argues that Leonard threatened to send his bother and mother to prison or that they might end up dead like his nephew's mother. Leonard denied using those exact words but admitted that he told the defendant his mother would be guilty of a felony if the firearm that was used in this instance were located in her apartment. Defendant contends these threats were made during the portion of the interview that was not recorded. We note that this Court was not provided with a copy of the DVD played at trial. Defendant's interview was approximately two and a half hours. Defendant contends these threats were made during the portion of the interview that was not recorded. ,The court, again found the officer credible. The statements admitted by Leonard, while no doubt unsettling, were an accurate description of the potential criminal exposure defendant's mother faced, and did not constitute a threat.

The defendant further argues that he was sleep deprived, emotional and under the influence of alcohol during the interrogation. The court viewed the recorded portion of the interview in light of these claims and concluded that the defendant was not " heavily under the

influence of alcohol." The court described defendant's interchange with the officer as "cooperative" and found defendant's answers to the questions asked to be appropriate. Thus, the court found no credible evidence that during the interrogation, defendant complained of being food or sleep deprived, was intoxicated, ill, physically abused or threatened with physical abuse. See *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988). Given the proper deference to the trial court's credibility determination that there were no threats made, and the totality of the circumstances surrounding defendant's statements, the trial court's determination that defendant's statements were voluntary was not clearly erroneous. *Id.* at 333-334; *Burrell*, 417 Mich at 448.

Defendant also argues that failure to record the entire statement supported excluding the statement under MRE 106 the rule of completeness and for noncompliance with MCOLES rules. Under the rule of completeness in MRE 106, "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Defendant's reliance on MRE 106 is misplaced. This "rule of evidence [is] only ... pertinent if defendant sought, but was denied, permission to have a complete writing or recorded statement introduced." *People v McGuffey*, 251 Mich App 155, 161; 649 NW2d 801 (2002). Defendant's request was one for exclusion, not inclusion. It was impossible for the trial court to play the video of the entire interrogation because it was not all recorded.

The Michigan Commission on Law Enforcement Standards (MCOLES), were created by the Commission on Law Enforcement Standards Act (CLESA), MCL 28.601 et seq. to establish rules for minimum law enforcement standards, certify individuals as police officers and administer training funds for law enforcement personnel. Officer Leonard testified that he received MCOLES training regarding the recording of interrogations, but that he was unfamiliar with the process and how the equipment worked due to having only used the interview room a handful of times. Defendant cites no authority in the statute or case law for excluding the recorded part of the interrogation based on the failure to follow the recording standards cited in the MCOLES. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v City of Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). Accordingly, this issue is waived. *Id.*

Defendant last contends that his statements were inadmissible because of the officers' failure to record them under MCL 763.8, which states that a "law enforcement official interrogating an individual in custodial detention regarding the individual's involvement in the commission of a major felony shall make a time-stamped, audiovisual recording of the entire interrogation." MCL 763.7(d) defines "major felony" as "a felony punishable by imprisonment for life, for life or any term of years, or for a statutory maximum of 20 years or more[.]" The MCOLES do not apply to defendant where he was charged with felonious assault that was punishable by not more than four years' imprisonment and/or a fine of not more than $2,000. MCL 750.82; MCL 750.503. Defendant was subject to a twenty-year sentence because of his status as a previously convicted person. It was the habitual charge, and not the underlying

offense that enlarged his risk of incarceration. Because defendant's offense does not qualify as a major offense under the statute, defendant's statements were not required to be recorded.

## IV. DESTRUCTION OF EVIDENCE

### A. ISSUE PRESERVATION AND STANDARD OF REVIEW

An issue is preserved for appeal when it was raised in and addressed by the trial court. *People v Conner*, 209 Mich App 419, 422; 531 NW2d 734 (1995). Defendant preserved his constitutional due process issue at trial with an oral motion to suppress and the court denied the motion. Defendant did not however argue below that the video should also be excluded under the rules of evidence.

"We review de novo the trial court's ultimate decision to suppress evidence on the basis of an alleged constitutional violation." *People v Dagwan*, 269 Mich App 338, 341; 711 NW2d 386 (2005).

Unpreserved evidentiary issues are reviewed for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763–764; 597 NW2d 130 (1999). A defendant's substantial rights are affected if the error affects the outcome of the proceedings. *Id*. at 761-762.

### B. ANALYSIS

Defendant moved pretrial to have the original video of his partially recorded statement examined by Ed Primeau, an audio and video forensic expert, because Primeau's assessment of the video copy provided to defendant was that it was compressed, of poor quality, and had "frozen video frames." Primeau's affidavit was not presented to this court nor is there record of an affidavit being presented to the trial court. According to the motion presented to the trial court, defendant believed that the video had been altered. The trial court granted defendant's motion and defendant learned that the original video had been erased from the hard drive after copies of it were made. At trial, defense counsel moved the court to suppress defendant's partially recorded interview with police. The trial court denied the motion. It held that there was no indication that the recording was intentionally partially recorded and that it would caution the jury by way of an instruction to consider that the exhibit was a partial recording.

Defendant argues that the destruction of the original recording was unnecessary, intentional and in bad faith.

"A criminal defendant can demonstrate that the state violated his or her due process rights under the Fourteenth Amendment if the state, in bad faith, failed to preserve material evidence that might have exonerated the defendant." *People v Heft*, 299 Mich App 69, 79; 829 NW2d 266 (2012). "In order to warrant reversal on the claimed due process violation, a defendant must prove that the missing evidence was exculpatory or that law enforcement personnel acted in bad faith." *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). "Failure to preserve evidentiary material that may have exonerated the defendant will not constitute a denial of due process unless bad faith on the part of the police is shown." *People v Hunter*, 201 Mich App 671, 677; 506 NW2d 611 (1993), citing *Arizona v Youngblood*, 488 US 51, 57; 109 S Ct 333;

102 L Ed 2d 281 (1988). "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood*, 488 US at 56 n *.

While we disagree with the trial court's finding that the original videotape was not intentionally destroyed, we agree that no bad faith was proven. The prosecution admitted that the Kalamazoo Public Safety Department routinely recorded over its hard drive recordings after making copies of those recordings. Thus they acted intentionally. However, while this practice may be unwise, the defendant did not demonstrate that the department acted with knowledge that exculpatory material was on those tapes or that the department destroyed the tapes after the court's order for the production of the original. Defendant argued at trial that the destruction of the original video also destroyed metadata that was necessary for his expert's complete analysis. Again, we note that the expert's affidavit is not in the record. There is no evidence to suggest that the police department was aware that it was destroying metadata when it deleted the original video or the impact that the destruction of metadata would have on a forensic analysis of the video.

Defendant additionally argues that a duplicate of the recording was inadmissible under the rules of evidence. MRE 1002 provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." "An 'original' of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it." MRE 1001(3). However, "[t]he original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if[,]" among other reasons, "[a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith...." MRE 1004(1). This argument was first made on appeal. Defendant rather asserts, "the original recording was important to show that certain statements were omitted from the copy of the recording that still existed and was used by the prosecution." At trial, the prosecutor stated it had the same copy as the defendant. The court found this to be credible and the defense offers nothing in support of this assertion of prosecutorial misconduct other than his argument. The statements that defendant sought from the original video were "threats" that Officer Leonard made to defendant that "his brother and mother would go to prison, or would end up dead like his nephew's mother." Leonard admitted that he left out of his report that he threatened to send defendant's mother to prison, and testified that he did not consider it a threat because defendant's mother would be guilty of a felony if the firearm that was used in this instance were located in her apartment. Thus, even if such statements were made in the unrecorded portion of the interview the jury was made aware of those statements.

## V. DENIAL OF CONTINUANCE

### A. STANDARD OF REVIEW

"A trial court's decision whether to grant a continuance is reviewed for an abuse of discretion." *People v Jackson*, 467 Mich 272, 276; 650 NW2d 665 (2002), citing MCR 2.503(D)(1). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015).

B. ANALYSIS

We consider the following five factors when deciding whether the trial court abused its discretion in not granting the defendant a continuance:

 1) the defendant was asserting a constitutional right; 2) he had a legitimate reason for asserting the right; 3) he was not guilty of negligence; 4) prior adjournments of trial were not at the defendant's behest. To these four points we add the traditional requirement that defendant on appeal must demonstrate prejudice resulting from the trial court's abuse of discretion. [*People v Wilson*, 397 Mich 76, 81; 243 NW2d 257 (1976)].

Applying these factors, defense counsel requested the continuance based on the assertion of defendant's constitutional and statutory right to be present at his trial. See *Illinois v Allen*, 397 US 337, 338; 90 S Ct 1057; 25 L Ed 2d 353 (1970); MCL 768.3. Defense counsel's reason for asserting the right was arguably not legitimate given that defendant purposefully absented from court and refused to return. On appeal, defendant concedes that his failure to appear was voluntary and negligent. As to the fourth factor, the court noted one prior adjournment and one previous failure to appear for this defendant. At this point, three out of four factors favor denying the continuance. Defendant's argument on appeal concerns the fifth factor of prejudice.[3] Defendant argues that the denial of a continuance resulted in prejudice to him in the form of denying him his rights to testify and to present a defense.

A criminal defendant has a constitutional right to testify in his own defense. *Rock v Arkansas*, 483 US 44, 51-52; 107 S Ct 2704; 97 L Ed 2d 37 (1987); *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). " 'In fact, the most important witness for the defense in many criminal cases is the defendant himself.' " *People v Solomon*, 220 Mich App 527, 534; 560 NW2d 651 (1996) quoting *Rock v Arkansas*, 483 US 44, 51–52; 107 S Ct 2704; 97 L Ed 2d 37 (1987). Further, "[t]he right to present a defense is a fundamental element of due process ..." *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006), cert den 549 US 1133; 127 S Ct 976; 166 L Ed 2d 740 (2007) (quotation omitted). Neither right is absolute, however. *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984); *Rock*, 483 US at 55-56. The accused is still required to comply with "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). Additionally, the right to

---

[3] We do not find, as the trial court did, that defendant waived his constitutional and statutory right to be present at trial by his voluntary absence. "A valid waiver of a defendant's presence at trial consists of a specific knowledge of the constitutional right and an intentional decision to abandon the protection of the constitutional right." *People v Buie*, 298 Mich App 50, 57; 825 NW2d 361 (2012) (citation omitted). Defendant exercised his right to testify, however there is nothing in the record to indicate that defense counsel warned defendant of the possibility of defendant's testimony being stricken thereby denying defendant the rights to testify and present a defense. Thus, the record is silent as to defendant's "specific knowledge of the constitutional right and an intentional decision to abandon the protection of the constitutional right." *Id*.

present relevant testimony "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id*. at 295. "But restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve." *Rock*, 483 US 55-56.

Defendant's voluntary abstention from the remainder of his trial denied the prosecutor cross-examination. "[C]ross-examination is more than a desirable rule of trial procedure . . . [It] helps assure the accuracy of the truth-determining process." *People v Arenda*, 416 Mich 1, 8; 330 NW2d 814 (1982) (quotation marks and citation). In this instance, the trial court's decision to strike defendant's testimony was not arbitrary and was within the range of principled outcomes where defendant's right to testify bowed to accommodate the legitimate interests of fairness and reliability in the criminal trial process. Defendant did not suffer prejudice from this decision. Defendant's right to present a defense was not deprived where, as defendant admits, "Most of the witnesses testified that the shooting appeared to be accidental and that Mr. Haywood would not hurt anyone. Other witnesses testified that they did not see who fired the shots, and at least one witness testified that it was not Mr. Haywood." The jury was also instructed not to consider defendant's absence from trial in evaluating his guilt or innocence.

## VI. ACCIDENT JURY INSTRUCTION AND INEFFECTIVE ASSISTANCE OF COUNSEL

### A. PRESERVATION AND STANDARD OF REVIEW

To preserve a challenge to jury instructions on appeal, a party must object to or request a jury instruction before the jury deliberates. *People v Sabin*, 242 Mich App 656, 657; 620 NW2d 19 (2000). Trial counsel failed to preserve this issue because he did not request an instruction on accident and did not object to the jury instructions as given. Unpreserved instructional errors are reviewed for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 762-764; 597 NW2d 130 (1999). An error is prejudicial when it affected the outcome of the trial. *Id*. at 763.

To preserve an ineffective assistance of counsel claim, a defendant must raise the issue in a motion for a new trial or a motion for a *Ginther*[4] hearing. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Defendant took neither of these steps so this issue also is not preserved. Unpreserved claims of ineffective assistance of counsel are reviewed for mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

### B. ANALYSIS

Defendant argues that the trial court should have sua sponte instructed the jury under M Crim JI 7.3a, because the issue of accident was central to the case. Alternatively, defendant argues that his trial counsel was ineffective for failing to request the jury be instructed on accident.

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

A defendant has the right to a properly instructed jury. *People v Rodriguez*, 463 Mich 466, 472-473; 620 NW2d 13 (2000). "The jury instructions must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014) (citation and quotation marks omitted).

In order to prove ineffective assistance of counsel, defendant must be able to show "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Decisions regarding which defenses to raise are a matter of trial strategy. *People v Henry*, 239 Mich App 140, 149; 607 NW2d 767 (1999). "[W]e will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 590; 831 NW2d 243 (2013). "A failed strategy does not constitute deficient performance." *People v Petri*, 279 Mich App 407, 412–413; 760 NW2d 882 (2008).

There was testimony from Girton at trial to support that Crabtree was shot by accident in a scuffle. Alternatively, there was an inference that defendant did not intend to actually shoot Crabtree. Regardless of this testimony, the instruction on accident was not warranted. M Crim JI 7.3a provides that the defendant is not guilty of said offense *because of* accident. However, where there is evidence that the defendant intentional retrieved and fired the weapon for the purpose of placing both Crabtree and Mouser in fear of a battery, accident is inapplicable. The claimed accident was the actual injury to Crabtree. Under the other "accident" argument, that the shots were fired in a scuffle, the testimony from Girton was that the defendant never possessed a gun and that she never saw a gun. Defendant's testimony in support of this theory of "accident" was stricken due to his absence from trial.

It follows that while defense counsel had a thin basis to request the jury be instructed on accident, he made a strategic choice not to do so. Defense counsel chose instead to argue the credibility and reliability of the witnesses' testimony and the absence of the gun being found to illustrate that defendant had not had a gun on December 15. This was a reasonable strategy given that a majority of the witnesses testified they were intoxicated and could not remember all the events of that night, no witness saw defendant fire the gun outside, and the gun was never located. The fact that defense counsel's chosen strategy did not work is not a ground for finding ineffective assistance of counsel. *Petri*, 279 Mich App at 412–413.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien